**HAYTER LUMBER COMPANY et al.,**
Appellants,

v.

Preston WINDER, Appellee.

No. 6065.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 27, 1956.

Rehearing Denied Nov. 28, 1956.

Thompson & Stripling, S. M. Adams, Jr., Nacogdoches, for appellants.

Fulmer, Fairchild & Barnett, Nacogdoches, for appellee.

R. L. MURRAY, Chief Justice.

This is a personal injury suit by Preston Winder, appellee, of Nacogdoches County, against appellants Hayter Lumber Company, a partnership, composed of Sam B. Hayter, Jr., Penelope H. Anderson and husband, Guy T. Anderson, Buford H. Bell and husband, Kelly Bell, and Mary Elizabeth H. Montgomery and husband, W. C. Montgomery, as the partners owning said partnership, said Hayter Lumber Company also being located near the City of Nacogdoches in Nacogdoches County. Judgment was for the appellee against appellants Hayter Lumber Company, a partnership composed of the individuals above named, and against Sam B. Hayter, Jr., individually, the member of the partnership who was personally served with citation, for the sum of $20,000, with interest and costs.

The suit arose out of an injury to Preston Winder while he was employed and was working in the course of his employment at Hayter Lumber Company on May 13, 1953. The ownership of the partnership was stipulated at the beginning of the trial and the parties further stipulated before the court and jury that the appellant, Hayter Lumber Company, was eligible to be a subscriber under the Workmen's Compensation Laws of the State of Texas, Vernon's Ann.Civ.St. art. 8306 et seq., and to carry a policy of Workmen's Compensation Insurance upon its employees as provided in the law, but on that date it was not a subscriber, having failed to exercise its option to acquire such insurance.

The case was begun on December 19, 1955 and completed on December 21, 1955, and on that date the jury returned the verdict upon which the court entered its judgment in favor of appellee, and against appellants for the amount above set forth.

Original and amended motions for new trials were duly and timely filed by the appellants, which amended motion for new trial was overruled by the court; appellants have duly perfected their appeal to this court.

Appellee was injured by being struck on the back by a piece of timber that was dropped from a higher level at the mill of the appellants, and he alleged that as a result of said accident he has suffered pain and is totally and permanently disabled and will, in all probability, be totally and permanenty disabled for the balance of his life. At the time of the accident the appellee was fifty-six years of age.

The appellee alleged that the appellants were guilty of negligence by: (a) failure to keep a proper lookout upon the part of the employee throwing the timber; (b) the act of throwing the timber upon the plaintiff; and (c) the failure of the employee throwing the timber to give a warning signal before throwing the timber. The appellants in their answer denied that they were guilty of any act of negligence and in the alternative, alleged that the injury and resulting damages, if any, were the result of an unavoidable accident.

The jury found that the employees of appellant failed to keep a proper lookout and also found that they threw, dropped, or pushed the timber from the platform without giving proper warning, and found that each of said acts was negligence and a proximate cause of the injury to the appellee.

Appellants by their first point complain of a statement made by the appellee Winder, while he was testifying as a witness, that immediately after his injury one

Green, another employee, told other employees of the appellants that they were "going to kill somebody if they didn't quit throwing that timber." Appellants say that this was a vicious hearsay statement intended to convey to the jury the impression that the appellants' mill was being operated in such a way as to endanger a man's life. They also say that the trial court allowed the testimony to be introduced over their objection. The record does not substantiate the contention of the appellants. Winder did testify, after he had detailed the manner in which he was struck by a board thrown or dropped on him by other employees of the appellants, that Maurice Green came by and that he told Green about his injury. The witness added, not in response to any question, "and he went up there and said something to them about it, and told them they were going to kill somebody if they didn't quit throwing that timber." An objection was made and then the witness was asked whether he heard Green make that statement to anybody and the witness answered that he did not. Appellee's counsel then said "then we don't offer it, Your Honor, if he didn't hear it." Counsel for appellants moved the court, "We ask that that be stricken, withdrawn from the jury." The court then instructed the jury not to consider what the witness or what some other man told the other employees. We find no other reference to this incident anywhere else in the testimony. The court granted the appellants' request that the jury be instructed to disregard the statement. We do not find in this incident any error and the point is overruled.

■■ By their second point the appellants complain of a portion of the argument made to the jury by counsel for appellee. The appellee points out that the alleged improper argument is not brought before this court in such a manner that it may be considered. The court reporter who prepared the statement of facts also prepared a copy of the argument of coun-

sel for appellee and certified that the copy which he had attached to the statement of facts was true and correct as reflected by his notes. That is the only authentication in the record of the argument complained of. It is not included in the statement of facts; and it has not been approved by counsel for either party nor by the trial judge. There is no bill of exception regarding the argument. Under the holdings in Associated Employers Lloyds v. Wynn, Tex.Civ.App., 230 S.W.2d 838; Hartford Accident & Indemnity Co. v. Ethridge, Tex.Civ.App., 149 S.W.2d 1040 and Wilson v. Texas Cresoting Co., Tex. Civ.App., 270 S.W.2d 230, in the absence of a Bill of Exceptions an appellate court will not pass upon argument or remarks of counsel as constituting reversible error. This point must be overruled because of the insufficiency of the record to support the complaint.

We have read the argument complained of, however, and do not believe that even if the matter were properly presented it would show reversible error. Counsel for appellee made the following remarks in the course of his argument:

"Is there a man living anywhere now that would swap health for the condition this old boy is in for $50,-000.00? No; no he would not. Is there a man anywhere that would go through the pain that he endures each day for $100.00? No, he wouldn't —the pain only. Making that little money over at Hayters of a chinci little amount of $30.00 a week."

■ No objection was made of this argument at the time and no motion for mistrial was made. It is doubtful whether the argument was an improper discussion of the damage issue, but certainly if it was it was not of such a type that an instruction from the trial court could not have cured the error. Under Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 and Texas & N. O. Ry. Co. v. Sturgeon,

142 Tex. 222, 177 S.W.2d 264, an objection followed by an instruction from the trial court to the jury not to consider the argument would have removed any harmful effect.

By their third point the appellants complain of the action of the trial court in including in Special Issue No. 7 of the court's charge an instruction that the jury might take into consideration, among other things, mental suffering of appellee from the time of the accident to the date of trial and such mental suffering which appellee with reasonable probability will suffer in the future. They say there was no evidence as to any mental suffering of the appellee past or future. They contend that appellee's evidence by his own medical witness, Dr. Brodsky, is wholly insufficient to sustain the burden of proof as to this point. The appellants quote in their brief only a very small portion of Dr. Brodsky's testimony. When he was asked the question as to what was the reasonable likelihood as to Winder's continuing to suffer from pain as a result of his injury he answered at length, his answer fills all of one page of the statement of facts. The appellants concede that mental suffering will be implied from injuries which are accompanied by physical pain. From Dr. Brodsky's testimony the jury would be warranted in finding that the appellee had suffered pain in the past and that there was a reasonable probability that his pain would continue in the future for an indefinite period. No error is shown by this point and it is overruled.

The real controversy in this case is to be found in appellants' fourth point, under which they complain that the verdict of the jury and the judgment of the court assessing the appellee's damages at $20,000 is grossly excessive, arbitrary and confiscatory under the evidence and facts of the case. They say that such a finding by the jury indicates a vindictiveness or prejudice toward the appellants or a biased mind toward the appellee. In support of this contention appellants point out that appellee Winder was 56 years of age, was earning $30 per week, that the accident occurred on a Friday about 11 o'clock a. m., and he finished the day's work; that the sawmill did not run on Saturday or Sunday and on Monday morning following he went back out and worked one hour, until the mill broke down. He then saw Dr. Pennington on that day and the following day Dr. Pennington treated him and took some X-ray pictures. Winder did not go to a hospital and continued to drive back and forth in his truck. Dr. Pennington saw him at his office and treated him again on May 31st and regularly thereafter until July 1st; that Winder had many physical disabilities existing prior to the time of his injury. He suffered an injury in 1936 to his knee, which caused his knee to stay stiff, caused him to limp as he walked; at the time Dr. Brodsky examined him after the accident he had a blood pressure of 240/140, which was considerably above normal; he had an enlarged heart on the left, and the hardening of some blood vessels, he had considerable shrinkage of his right leg and of his thigh muscles and calf muscles that were probably due to his old knee injury; he had some narrow spaces between the discs of his spine which might have been there before the injury; his joints showed arthritic changes which occur with hard work and age and normally could be expected in a man of his age; that he had a difference in leg length prior to the injury; his pelvis might have been affected by his old injury. According to Dr. Pennington Winder told him about July 1st that he felt considerably better and was going back to work; whatever trouble Winder had with his back after being hit with a piece of lumber appeared to be healed. Appellants say that undoubtedly the jury must have taken into consideration the infirmities and disabilities of Winder existing before the accident in assessing the amount of damages; they say that the evidence before the jury complained of under their first point and the argument of

counsel for appellee, complained of in their second point, and the large amount of damages assessed, all point to their argument and contention that the verdict was excessive.

Appellee points out, however, that at the time of his accident he was married and supporting a family of three minor children, that while stooping over to pick up a piece of lumber, while in the employ of the appellants, he was struck in the back by a piece of 1 by 4 timber, 6 feet long, thrown or dropped from the plant some 10 or 15 feet high. He tried to work on a few days but could not stand up to it; he went to the company doctor, who put a back brace on him for three months. He testified that he suffered extreme pain from the injury; his back is stiff and he cannot bend it; that he never had any trouble with his back before the injury. Dr. Brodsky, an orthopedic specialist, found muscle spasm and a complete obliteration of the lumbar curve in Winder's spine; he testified that the cause of such obliteration usually causes a great amount of pain; that he found a compression fracture of a vertebra, fracture of the 12th right rib and a low back sprain. Both Dr. Brodsky and Dr. Pennington stated that Winder tended to minimize his complaints rather than exaggerate them and Dr. Pennington even referred to him as a stoical type individual. Dr. Brodsky testified that in reasonable probability Winder was totally and permanently disabled from doing any work and that he would continue to suffer pain. He used this phrase, however, "if he walks too much, or if he sits too long, or if he tries to strain too much, lift consistently or be on his feet too long, I think that the reasonable probabilities are that he will, his back will let him know it." Winder had a life expectancy of 16.06 years.

Under this point we have found it necessary to explore again many of the holdings of our appellate courts in regard to excessiveness of verdicts in personal injury cases. The awards as damages in many cases reviewed are as varied as the type of injuries themselves depicted in the opinions. Through all of the decisions involving this troublesome question is to be found the underlying principle that there is no rule regulating the measure of damages and no standard or table to guide a reviewing court in determining whether a verdict is excessive, and generally each case must be reviewed in the light of the facts of that particular case. The measure of damages in such a case is not susceptible to mathematical calculation and each case must be measured by its own facts with considerable discretion vested in the jury itself. With regard to injuries to the back and spine, it is most noticeable that the reviewing courts are hesitant to disturb a verdict when it is supported by satisfactory evidence of the injury and a following disability. From the evidence in this case it seems to be unquestioned that Winder's back was injured. There is evidence that he has suffered and will suffer pain and anguish and that his back in all probability will never get any better. It was the function of the jury to determine from the evidence the amount of money which would reasonably compensate him for his suffering and disability. We do not agree with the appellants' contention that the size of the verdict, when considered in connection with the type of injury appellee received, shows it to be the result of vindictiveness or prejudice toward the appellants or a bias mind toward the appellee. The amount awarded as damages is large, but we see no reason why we should hold it to be excessive and not supported by the evidence, and the appellants' fourth point is overruled.

The judgment of the trial court is affirmed.