**COASTAL STATES GAS PRODUCING COMPANY, Appellant,**

v.

**Helen LOCKER et al., Appellees.**

**No. 141.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Nov. 20, 1968.

Reformed and Affirmed Dec. 4, 1968.

Rehearing Denied Jan. 8, 1969.

James R. Bertrand, William R. Eckhardt, Vinson, Elkins, Weems & Searls, Houston, for appellant.

Tom Lorance, Lorance & Stamm, Harold Lloyd, Lloyd & Shenk, Finis E. Cowan, Baker, Botts, Shepherd & Coates, Don Weitinger, Stafford & Weitinger, Houston, Bill Allen, guardian ad litem, Houston, for appellees.

SAM D. JOHNSON, Justice.

This suit was brought by Helen Locker, individually and as Next Friend of her minor son, Larry Locker, against Coastal States Gas Producing Company, Ford Motor Company, Jacobe-Pearson Ford Company, and Executive Car Leasing Company. The suit was for recovery of damages for personal injuries allegedly sustained in an automobile collision that occurred on April 23, 1965. The action was dismissed as to Jacobe-Pearson Ford and a motion for directed verdict in favor of Executive Car Leasing Company was granted.

On the occasion in question a new Lincoln Continental automobile was being driven by Morris Wayne Rape, who was an employee of Coastal States Gas Producing Company. The automobile as manufactured by Ford and sold by Ford's dealer, Jacobe-Pearson, to Executive Car Leasing Company, who in turn leased the automobile to Coastal States Gas Producing Company. As Rape drove the automobile out of the Sheraton-Lincoln hotel garage, it collided with an automobile being driven by Helen Locker, in which Helen Locker was accompanied by her son, Larry Locker, who was riding in the right front seat. The Locker vehicle was in the street passing by the parking garage when it was struck in the right side by the automobile being driven by Rape.

Based on favorable jury findings for the plaintiffs, the court entered judgment against Coastal States for both Helen Locker and her son, Larry Locker. The total judgment in behalf of Helen Locker was $93,000.00, which included $50,000.00 for care and treatment of Larry Locker to the age of twenty-one years. The balance awarded Helen Locker was for physical pain, mental anguish, reduced earnings and earning capacity, loss of services performed by Larry Locker and future medical treatment to Helen Locker. The judgment for Larry Locker was $500,000.00 which included $400,000.00 for mental impairment, mental anguish and reduced wage earning capacity, and $100,000.00 for care and treatment beyond the age of twenty-one years.

In essence, plaintiffs contended that they had been injured in a collision caused by the negligence of either Coastal States or Ford, or both. The jury found that the cause of the accident was the failure of Rape, the Coastal States' driver, to maintain a proper lookout and to make proper application of his brakes. Judgment was entered for plaintiffs on the basis of these liability findings.

It was Coastal States' theory that the cause of the accident was a brake failure on the automobile being driven by its driver, Rape. Coastal States' contention in the trial court was that there was air in the brake fluid and that the presence of this air accounted for their not working at the time of the collision even though they had previously operated properly.

The testimony of two Coastal States' employees was that the automobile in question was new, having been driven less than 90 miles. During this time the automobile, including the brakes, functioned perfectly. Rape testified that on the date in question he drove up the ramp of the parking garage without making any application of his brakes. He testified that he drove to the exit of the Sheraton-Lincoln parking garage and when he was a couple of feet

from the curb for the first time made an application of his brakes. It was Rape's testimony that the brakes did not work or respond. His superior, also a Coastal States employee, testified in support of the brake failure theory. It was his testimony that shortly after the accident he pumped the brakes a number of times and that the brake pedal went all the way to the floor without response. Rape further testified that without any work on the brakes, he shortly thereafter drove the automobile back down the ramp into the parking garage and experienced no difficulty with the brakes. Following the collision Coastal States requested the brakes to be checked by Jacobe-Pearson. Coastal States' theory, as well as its version of the accident, is altogether inconsistent with that of the plaintiffs, and appears to have been wholly rejected by the jury.

Plaintiff, Helen Locker, testified that as she approached the place where the collision occurred, she saw a large black automobile stopped dead still just outside the parking garage and that the driver of the vehicle was looking down at the dashboard or floorboard. It was her testimony that it was this automobile that moved forward as she was passing and struck the right side of her vehicle. It was the plaintiff's theory that the collision occurred without any nature of warning to the plaintiffs and that it caused the extensive damages that were occasioned.

■ Appellant initially contends that the court committed prejudicial error in refusing to admit in evidence portions of certain business records of Jacobe-Pearson. The first was exhibit number five, which was a repair order of Jacobe-Pearson that came into existence when the Coastal States employee took the car that was driven by Rape in for service and to be checked after the collision. The exhibit contained the following notation made by the service writer to whom the car was initially taken, "Check brakes for going to floor and report. See Butler." It does not appear that this was a record of any test done by a Ja-

cobe-Pearson employee, but was the complaint made by the Coastal States employee who brought the automobile to Jacobe-Pearson for service. This notation, therefore, while placed upon a business record, was not a notation by some person or employee having personal knowledge of the matter recorded. More accurately, it was a self-serving declaration by a Coastal States employee that was placed upon the business record when it occurred.

■ The second excluded notation was, "Air in brake system—abnormal time to remove air to get brake pedal." This notation was placed upon the record by the Jacobe-Pearson service manager in the course of later making a warranty claim against the manufacturer, Ford. The record here indicates that this second notation was not a recitation of fact based on personal knowledge of anyone testing the brakes but actually was conjecture on the part of the service manager. The mechanic who bled the brakes testified there was no air in the brake fluid and that he never advised the service manager or any of his superiors that there was air in the braking system of the vehicle. The service manager testified that he arrived at his conclusion from the notation on the time card indicating that an hour and a half had been used in removing the brake fluid from the vehicle. He testified, however, that one could not tell from an analysis of the time involved that there was air in the brake system. He further stated that the time clock that made the entries upon which he based his speculation was out of order and that the time entries were inaccurate.

■ Even though contained in a properly authenticated record, opinions based upon mere speculation and conjecture should be excluded. Travis Life Ins. Co. v. Rodriquez, 326 S.W.2d 256 (Tex.Civ. App.), ref., n. r. e. at 160 Tex. 182, 328 S.W. 2d 434. Martinez v. Williams, 312 S.W.2d 742 (Tex.Civ.App., Houston), no writ hist. Opinions expressed in records are admissible only where an opinion is well recognized and a reasonably certain one on

which experts would not normally disagree. Loper v. Andrews, 404 S.W.2d 300 (Tex. Sup.Ct.1966). Rather than a well recognized opinion the notation here was speculation and conjecture. The requirement for personal knowledge may be unique to the Texas statute, Art. 3737e, nevertheless it is applicable to this jurisdiction. Loper v. Andrews, supra; North Texas Lumber Co. v. Kaspar, 415 S.W.2d 470 (Tex.Civ. App.), ref., n. r. e.; Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex.Sup.Ct.1962).

■ Appellant further contends that the trial court erred in refusing to admit in evidence a statement contained in the history that the plaintiff, Helen Locker, gave to Dr. Homer Taylor. The excluded portion recited, "The patient (Helen Locker) states that this car hit her broadside due to faulty brakes." Plaintiffs here plead that the accident was caused by brake failure. The plaintiff's consistent position was that this collision was caused by either the negligence of Coastal States, or Ford, or both. Though Mrs. Locker testified that the Coastal States vehicle was stopped as she approached the point of impact, her testimony was not inconsistent with some type of brake failure on the part of the other vehicle. It was her testimony, in fact, that she never saw the car that hit her move. The record gives no indication that Mrs. Locker had any personal knowledge that the accident involved faulty brakes. The only basis for this statement would be the self-serving declarations of the Coastal States employees at the scene of the accident.

According to the position and testimony of Mrs. Locker, the only thing she could know of her own knowledge with reference to the accident was that she was struck in the right rear by the Coastal States vehicle. She would have no method of having personal knowledge as to whether or not the Coastal States vehicle had a brake failure. The quoted language therefore, was the reflection of an opinion statement made by Mrs. Locker that was based on self-serving declarations of employees of the adverse party. We do not believe this statement to have been an admission against Mrs. Locker's interest and was, therefore, properly excluded by the trial court. Skillern & Sons, Inc. v. Rosen, supra. Appellant's points of error numbers one through six are overruled.

■ Appellant contends that the trial court erred in taxing the fee of the guardian ad litem against them and in permitting such guardian to fully participate in the trial of the case before the jury. While the fee awarded might have been apportioned otherwise, this, and the fee allowed, is within the discretion of the trial court. We find no abuse of such discretion. The court's appointment of the guardian ad litem anticipated if not required his fullest participation. These contentions are overruled.

■ Appellant's next complaint is addressed to the size of the jury's verdict as to Larry Locker. It was in the sum of $400,000.00 for mental impairment, mental anguish and reduced wage earning capacity. Damages in the sum of $50,000.00 were awarded Helen Locker for his care and treatment to the age of 21 years. Damages in the sum of $150,000.00 were found by the jury for care and treatment of Larry Locker beyond the age of 21 years. In conformity with plaintiff's pleadings the last figure was reduced to $100,000.00 in the judgment entered by the trial court. It is significant that no complaint is made by the appellant concerning the sizable award to Helen Locker, and it is not under attack in this appeal.

At the time of the accident Larry Locker was four years, eleven months of age. Prior to the accident he appears to have been a normal male child, both mentally and emotionally. There is substantial testimony to this effect and none to the contrary. It seems clear from the record that he sustained some degree of brain damage in the collision and that it in all likelihood would be permanent.

It is our responsibility to view the evidence and inferences in support of the award in the light most favorable to the award of the jury. Green v. Rudsenske, 320 S.W.2d 228 (Tex.Civ.App.), no writ hist.; Louisiana & A. Ry. Co. v. Chapin, 225 S.W.2d 614 (Tex.Civ.App.), writ ref.; Wells v. Henderson, 78 S.W.2d 683 (Tex. Civ.App.), writ ref. In thus receiving the evidence the following circumstances are presented.

Significant changes were noted in Larry after the accident. He became hyperactive, began wetting the bed, suffered a deterioration in his relationship with other children and a loss of ability to concentrate on what he was doing. He developed an equilibrium problem and fell on a number of occasions for no apparent reason. He was placed in a class for brain damaged children by the school system. He was over a year below what he should have been in a regular classroom situation. His activity and behavior became unusual or different from normal and he experienced numerous problems in adjusting to other people. He was hyperirritable, hypermotoric, had a short interest span, poor memory and a reduced capacity to integrate with his environment. He was very loud and at times "almost uncontrollable." Ruth Blackmore, a consulting psychologist, described him as a child with a tendency to perseveration, with an auditory attention span at the level of a three-year old whose learning ability was not normal. Dr. Joseph R. Kennett, a clinical psychologist, found him to be impulsive, impatient, distractible and hypersensitive to sound. Dr. John E. Shogland, a neuro-surgeon, testified that two electroencephalograms were run on Larry. It was his opinion that the injury to Larry's head resulted in brain damage which was probably permanent. The projection was made that his behavioral problems would continue throughout his life.

According to plaintiff's medical testimony, Larry Locker's problems would be magnified as he grew older. This testimony indicated that he received a bruise to the brain and it was this brain damage that occasioned Larry Locker's inability to control himself and caused his problems in dealing with other people. His prognosis was that he would not be able to get through high school on a regular basis and college was out of the question. It appears that he could not function in a regular classroom now or in the future. He would not be able to hold any type of job which involved making judgments or the use of his own initiative. His chance for employment and his income producing ability would be limited.

The testimony of J. R. Kennett, a clinical psychologist, gives an indication of the other medical testimony regarding Larry Locker's condition. The doctor testified, "He had a verbal I.Q. of 80; performance I.Q. of 80; and a full scale I.Q. of 78 which is at the high end of the borderline of intelligence." Based on the tests given by Dr. Kennett, he stated, "They are right at the bottom of the dull normal or high borderline range." The "dull normal" category is below the intelligence level of a normal individual yet above that of a mentally retarded person.

Larry Locker seems to have undergone a number of behavioral changes and there is much testimony of personality and behavioral abnormality. He is loud and at times almost uncontrollable. He has much difficulty with concentration and in understanding simple directions. At times he is unaware of the consequences of his actions. He is subject to mood swings and has "quite a bit of aggression and hostility."

In the trial court no witnesses, lay or expert, were offered by appellant in rebuttal to the evidence of Larry Locker's damages. Appellant here makes no contention that the damages suffered by Larry Locker are inconsequential but takes the position that by comparison with injuries suffered by other individuals in other cases the injuries sustained here are minor. Appel-

598

lant contends that the instant case should be reversed and remanded for a new trial because the amount awarded is so grossly excessive that it must have been produced by passion, prejudice or other improper motive on the part of the jury in arriving at their verdict. This contention is overruled. We are of the opinion that the size of the verdict, when considered in the light of the evidence, is not so excessive as to warrant the conclusion here that it was the result of some improper motive without the necessity of extraneous proof.

▪ In the alternative appellant requests this court to grant a remittitur pursuant to Rule 440 of the Texas Rules of Civil Procedure. This court is therefore required to exercise its judicial judgment and discretion in determining whether the damages awarded Larry Locker exceed reasonable compensation under the evidence. "All the Court of Civil Appeals can do, and all that is required of it to do * * * is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess." Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993 (1916). The Supreme Court has consistently reaffirmed such position through Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959), when it made clear that the responsibility of the various Courts of Civil Appeals is the same as the trial court's.

Decisions in some Courts of Civil Appeals indicate there is no certain standard in the measurement of personal injury damages, that each must stand on its own facts and circumstances and that comparison with other cases and verdicts is of little or no help. Missouri Pac. R. Co. v. Handley, 341 S.W.2d 203 (Tex.Civ.App.), no writ hist; Hayter Lumber Co. v. Winder, 295 S.W.2d 730 (Tex.Civ.App.), writ dismd. Others indicate that reasonable uniformity should be obtained in awards for personal injuries. Gilbert v. Haigler, 363 S.W.2d 337 (Tex.Civ.App.), writ ref.,

n. r. e.; Port Terminal R. Assn. v. Noland, 288 S.W.2d 276 (Tex.Civ.App.), writ ref., n. r. e.; Kimbriel Produce Co. v. Webster, 185 S.W.2d 198 (Tex.Civ.App.), writ ref., w. o. m. See also 17 Tex.Jur.2d 425, Damages, Sec. 350.

▪ We turn first to the amount awarded in the court's judgment for the care and treatment of Larry Locker before ($50,000.00) and after ($100,000.00) twenty-one years, bearing in mind that the amount of damages suffered is ordinarily a fact issue and that this court should not substitute its opinion for that of the jury if the verdict is supported by sufficient evidence. Texas & P. Ry. Co. v. Crown, 220 S.W.2d 294 (Tex.Civ.App.), writ ref., n. r. e. Viewed in the light most favorable to the award of the jury the record here indicates the possible if not probable necessity for future medical tests, medical care and psychiatric therapy on a regular basis. Psychiatric care was estimated from $100.00 to $200.00 per month. Care in a residential treatment center, if this becomes necessary, was estimated at $600 to $800 per month. In addition, a conservative annual cost figure for future medical expenses, exclusive of tests or any intensive residential pyschiatric therapy, was estimated by Dr. Alfred H. Vogt as high as $2,000 per year. There is no exact formula for measuring future medical expenses and courts are reluctant to interfere where there is substantial evidence to support the jury's findings. Robinson v. Ashner, 357 S.W.2d 611 (Tex.Civ.App.1962), affirmed, 364 S.W.2d 223. At the time of the accident Larry Locker was five years of age. Though mortality tables are not binding, his life expectancy was established at 62.7 years. For all practical purposes the jury was considering care and treatment throughout the entire lifetime of Larry Locker. In view of the extreme lengths of time involved, and the approximations of cost that were testified to, we cannot say that the sums awarded for care and treatment before and after twenty-one years

are not supported by the evidence. As to these, appellant's contention is overruled.

■■■ We turn next to the award of $400,000.00 which was based upon mental impairment, mental anguish and reduced capacity to work and earn money. In view of the testimony, the jury properly could attach great monetary significance to the reduction, if not near destruction, of Larry's capacity to work and earn money in the future. In this connection we must again allude to the extreme lengths of time involved. It here involves the entire productive life of the minor plaintiff. Loss of earning capacity in the future is incapable of mathematical measurement particularly when dealing with a child of tender years. Galbraith-Foxworth Lumber Co. v. Gerneth, 66 S.W.2d 471 (Tex.Civ.App.), writ dismd. Lessened earning capacity may well be presumed when dealing with such an individual. But any attempt to evaluate it in terms of an appropriate and fair recovery in a child that has never had an opportunity to develop an earning capacity is fraught with extreme difficulty.

We have heretofore described the testimony concerning the mental impairment of Larry Locker. There is ample testimony to indicate a probable deterioration in his present condition. While he has not yet undergone psychiatric treatment there appears to be significant limitations on his intellect, reason and judgment. The projections concerning his mental ability, concentration, personality and future behavior contain small cause for optimism.

■■■ Equally difficult to assess is the element of mental anguish to date of trial and in the future. Though major significance might not at first be attached to the mental anguish of a boy the age of Larry Locker, it is a factor that will certainly be magnified as he increases in physical maturity and becomes aware of the mental and intellectual differences that set him apart from others. Where there is an inability to have normal communication and relationships with people, where there

is intellectual and mental impairment insofar as the ability to acquire, retain and apply knowledge and information, and where there will be an increasing realization of his mental and emotional inability to function in normal circles, we believe there will be mental anguish comparable to that where there is physical pain or the loss of limbs. Mental anguish may be presumed in cases of severe injury, Dallas Ry. & Terminal Co. v. Davis, 26 S.W.2d 340 (Tex.Civ. App.), no writ hist., and we believe may likewise be presumed in injuries such as are here presented. As with physical pain, the element of mental anguish must be left largely to the discretion of the jury. Robertson v. Rig-A-Lite Co., 394 S.W.2d 838 (Tex.Civ.App.), no writ hist.

Appellant cites numerous cases in support of its contention that there is a great discrepancy between the amount of damages awarded in the instant case and others. City of Austin v. Hoffman, 379 S. W.2d 103 (Tex.Civ.App.), no writ hist. ($82,243.70 with $25,000 for physical pain and mental anguish); City Transp. Co. of Dallas v. Davis, 257 S.W.2d 476 (Tex.Civ. App.), writ ref., n. r. e. ($5,000); Viking Construction Co. v. Beaird, 337 S.W.2d 699 (Tex.Civ.App.), no writ hist. ($171,200 with remittitur of $31,200); Houston Belt & Terminal Ry. Co. v. Burmester, 309 S. W.2d 271 (Tex.Civ.App.), writ ref., n. r. e. ($160,000 with remittitur of $40,000); Texas & N. O. R. Co. v. Foster, 266 S.W. 2d 206 (Tex.Civ.App.), writ ref., n. r. e. ($30,000); Newspapers, Inc. v. Love, 367 S.W.2d 185 (Tex.Civ.App.), reversed on other grounds, 380 S.W.2d 582 ($56,500); McDonald v. M.K.T. RR. Co., 401 S.W.2d 465 (Mo.1966), ($48,541 with trial court remittitur of $10,000); Cronenberg v. United States, 123 F.Supp. 693 (D.C.) ($35,000); and Barnes v. Smith, 305 F.2d 226 (10 Cir.) ($400,000).

The last cited case dealt with a twelve-year old boy of normal physical and mental development who was, in the court's words, "completely destroyed as a human being." The court described his condition as fol-

lows, "Severe and permanent brain injuries have resulted in loss of memory, loss of intellectual functioning, loss of orientation in space and time, difficulty in chewing, swallowing, talking and breathing, partial paralysis and injury to both legs and arms, loss of control over elimination processes, and many other difficulties. He is, however, aware both of his former normalcy and his present helpless and hopeless condition. The most optimistic prognosis is that he may, with extended therapy, one day regain the mental status of twelve years."

Certainly the extent of injury in the present case is not comparable to that above described. Here, immediately following the accident, Larry Locker appeared to be only moody, nervous, upset and apparently suffered only a minor bruise to the head. It was somewhat later that the brain damage became apparent. He now attends the special school class regularly and probably can continue as long as the special education facilities are available. He plays, swims and rides bicycles. He is responsive to the tranquilizers that are administered to him. Though it is doubtful that he will ever be capable of doing any work involving the use of judgment or his own initiative, he well could be capable of holding and doing some jobs. It must also be noted that no request for damages for physical pain was made and there is no evidence in the record concerning such pain. Dr. John E. Skogland testified, "No, I don't think this boy had any headaches, as I recall it. Otherwise, he would be without pain." In addition, he has not been a hospital patient subsequent to the accident, has incurred relatively small medical expenses and has undergone no psychiatric treatment to the time of trial.

In the opinion of this court, however, the evidence here realistically supports the award of a large sum of money as damages. While the injuries here sustained are not as great as can be found or imagined, they are, nevertheless, overwhelming in the eyes of the person suffering those injuries, and represent a profound and shocking change in his young life. We attach great importance to the fact that this five-year old child is left with significant and permanent brain damage, and that it will affect substantially all of his life.

We are not persuaded that tests of uniformity or comparability offer an objective approach to the solution of *this* problem in *this* case. What other juries, at other times, in other circumstances, that have awarded more or less damages to other litigants, should not be controlling here. Even to the extent considered we perceive no sound reason for limiting uniformity or comparability to the territorial limits of this state. This is not to say that the determination here made is free from any point of reference. One of these is that the amount here involved is conceded to be more than has been approved in a Texas case heretofore. A second is the lack of physical pain and suffering. A third is the problematical outlook for Larry Locker that is, while not optimistic, certainly not devoid of hope. We therefore attempt to apply a standard of no fixed measure to a situation with no near parallel.

The severity of the injuries here sustained must be conceded. Nevertheless, after careful consideration by each member of this court and a deliberate weighing of the testimony, we are compelled to the determination that the verdict of $400,000 in response to Special Issue No. 20, for mental impairment, mental anguish and reduced wage earning capacity is excessive by $100,000. The excessiveness of the award is simply that sum which in our best judgment exceeds the outside limits of propriety.

The judgment of the trial court therefore will be affirmed if the appellee, Larry Locker, will file in this court within thirty days hereof a remittitur in writing of $100,000; otherwise said judgment will be reversed and the cause remanded for a new trial.

Affirmed on condition of remittitur.

## ON FILING OF REMITTITUR

Appellee, Larry Locker, has filed herein a remittitur of $100,000.00, as suggested by this Court. The judgment of the trial court in favor of Larry Locker, and only that part, will be reformed in accordance with the remittitur, as to allow appellee, Larry Locker, recovery of $400,000.00 against appellant, Coastal States Gas Producing Company. The judgment as thus reformed will be affirmed. The cost of appeal will be taxed one-half (½) against appellant and one-half (½) against appellee.

The judgment of the trial court is reformed and affirmed.

Reformed and affirmed.