**J. O. PECK, Guardian and Next Friend for Mildred E. Peck, et al., Appellants,**

**v.**

**CENTURY CONCRETE PRODUCTS, INC., et al., Appellees.**

No. 16480.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 24, 1964.

Rehearing Denied Feb. 28, 1964.

Borden & Hand, Weatherford, Christopher & Bailey, Sheridan E. Taylor and M. Ward Bailey, Fort Worth, for appellants.

Brown, Day & Craig and M. Hendricks Brown, Fort Worth, for appellees.

LANGDON, Justice.

This is a personal injury suit arising out of a collision between a pickup truck driven by Oliver E. Peck, deceased, hereinafter referred to as Peck, and a tractor-trailer unit owned by Century Concrete Products, Inc., driven by Edmond O. Fletcher, hereinafter referred to as Fletcher. The collision occurred about one mile east of Weatherford, Texas on U. S. Highway 80 in the early morning hours of December 23, 1958. The pickup truck driven by Peck collided with the rear end of the tractor-trailer unit which had stalled partially on the highway. The weather was misty and foggy. Peck died from the injuries he received. A wife and five children survive him.

The jury answered all issues favorably to plaintiffs except special issues Nos. 20 and 21. In answer to special issue No. 20 the jury found Peck failed to keep a proper lookout for his own safety, and in answer to No. 21 that such failure was a proximate cause of the occurrence. The court overruled plaintiffs' motion to disregard the findings of the jury in response to these issues and entered judgment that plaintiffs take nothing. We affirm.

The appellants by 22 separate points of error attack the two "lookout" issues answered adversely to them. The grounds are no evidence, insufficient evidence, immateriality, contrary to the evidence, and against the preponderance of the evidence either to support the submission thereof or the jury's answers thereto. Other points are based on the court's refusal to disregard the findings and because the issues assumed a duty on the part of Peck to foresee or anticipate the alleged negligent acts of Fletcher, that submission therefore amounted to a charge to that effect, and constituted a comment by the court on the weight of the evidence.

These and other points briefed by the appellants present one primary question to be resolved by this Court, namely, was there sufficient evidence to support the submission of and the jury's answers to special issues Nos. 20 and 21.

In considering the appellants' no evidence points of error this court must consider that evidence which viewed in its most favorable light supports the findings of the jury. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359; Dillard v. Griffin, Tex.Civ. App., 341 S.W.2d 696; Henderson v. Smith, Tex.Civ.App., 354 S.W.2d 429.

In reviewing the record from the standpoint most favorable to the jury findings we have concluded that under all of the circumstances the jury was justified in believing and finding that Peck failed to keep a proper lookout and that such failure was a proximate cause.

Ordinarily proper lookout is a question for the jury. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332.

The record reflects that there were no witnesses to the accident itself. The only testimony relating to the accident or the scene thereof was that of Fletcher, Officer Tinsley of the Department of Public Safety, who investigated the accident, and L. L.

Stroud, a motorist who came upon the scene of the accident shortly after it occurred.

The accident occurred on the northern portion of a four lane divided highway at a point where the road was on a slight upgrade toward the west and a slight downgrade toward the east. Fletcher's truck had been going west on a two lane one way highway twenty-four feet wide with a shoulder on the right. As he proceeded west in this area the motor choked indicating that one of the saddle tanks was out of gas. He switched over to the other saddle tank. On switching over the truck cut off or choked out and Fletcher rolled to a stop, pulling as far as he could to the right. He finally came to a stop with a portion of the left rear end of his trailer on the far right of the highway. After his truck stopped there were approximately eighteen feet to the left of his vehicle open for westbound traffic. This included 12 feet in the inside westbound lane, two to four feet of the outside westbound lane partially occupied by the truck, and the median separating the west and eastbound lanes. The truck being disabled was entirely unexpected. Fletcher was there only approximately a minute and a half trying to get his truck started before Peck hit him from the rear. The force of Peck's pickup hitting the approximately 15,000 to 20,000 pound Fletcher truck with its brakes on knocked it some sixteen to twenty-two feet. It sustained severe damage to the rear duals and rear bed. There was testimony that it was bowed by the impact of the collision.

After his truck stopped Fletcher was attempting to get it started. He would hit his brakes to flash the rear lights for traffic approaching from the rear, the direction Peck came from.

There were eight or more red and yellow lights on the rear of Fletcher's unit and two large reflectors.

The record is silent as to any evidence indicating that Peck applied his brakes or attempted to turn to his left at any time

prior to the collision in an effort to avoid it. Considering the gouges in the pavement made by some part underneath the pickup and other physical evidence at the scene, Peck did not observe the truck and trailer and thus made no effort to turn left or to stop his vehicle even up to the last moment before impact.

Prior to Peck's collision with it, several vehicles proceeding in the same direction passed to the left of Fletcher's unit, indicating that the drivers of such vehicles were able to and did see it and thus were able to safely pass to the left of it.

On the occasion of the collision it was very foggy and dark. The pavement was wet and slick. The center of the pickup struck just about the center of the two duals on the trailer. The pickup was traveling almost straight ahead at the time of collision.

Officer Tinsley traveled to the scene of the accident at about 20 to 30 miles per hour due to fog and the condition of pavement, although under favorable conditions he would have proceeded at a faster rate of speed.

The witness Stroud, proceeding in the same direction as Peck, was the first to arrive at the scene of the collision.

A pickup, which under the evidence the jury could believe was the one driven by Peck, passed the vehicle occupied and driven by Stroud at a time when Stroud was driving 50 to 55 miles per hour and was about 2 to 4 miles from the scene of the accident. The pickup was proceeding fast enough to pass and get out of Stroud's view before Stroud came upon the accident and saw the pickup. No other vehicle passed Stroud after the pickup passed him and before Stroud came upon the scene of the collision. Stroud saw lights or reflectors on the vehicles involved in the collision when about 50 yards away as he approached the scene.

The severe damage and almost utter destruction of the pickup and the relative

positions of the two vehicles shown by the photographs and coupled with the testimony of Officer Tinsley and others warrant the inference of great speed and improper lookout on the part of Peck. The testimony and photographs also reflect that the speedometer needle on the pickup was stopped and remained fixed at a point between 70 and 75 miles per hour.

Prior to the collision Fletcher had checked the lights and reflectors and all were clear and operating. The jury could deduct from the evidence that they were burning and operating properly before the actual impact.

The collision occurred during the early morning hours on December 23, 1958. Peck was returning from a Christmas party where alcoholic beverages were served. From the evidence the jury could find and believe that Peck had joined others in drinking. A cap from a liquor bottle was found on the floor board of Peck's vehicle after the collision.

■ It was within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365.

■ The jury is the judge of the facts and circumstances proven and may draw reasonable inferences and deductions from the evidence adduced before it.

The contentions of appellants to the effect that submission of the issues in question assumed that Peck had a duty to anticipate or foresee the alleged negligent and unlawful acts of Fletcher and amounted to a charge by the court to that effect and constituted a comment by the court on the weight of the evidence are without merit.

■ While Peck was not required to anticipate negligent or unlawful conduct on the part of others, he was not entitled to close his eyes to that which was plainly visible and which would have been observed by a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273; DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Joe D. Hughes, Inc. v. Moran, Tex.Civ.App., 325 S.W.2d 829.

■ The issues were submitted in the usual and acceptable form approved by the courts of this State. Every driver who uses the highways of this State is charged with the responsibility of maintaining a proper lookout for his own safety. The person of ordinary prudence in the exercise of ordinary care on a dark and foggy night driving on an unlighted pavement which was wet and slick, circumstances in existence at the time and place in question, would be more prudent than was Peck when his conduct is examined in the light of the evidence which was available to the jury and compared with the conduct of a person of ordinary prudence who exercises ordinary care. Seldom, if ever, may one predict with any certainty the dangers that a proper lookout will reveal. Certainly it is to be expected that stalled, parked or disabled vehicles may be parked on or near the pavement. These and many other obstacles, including livestock and vehicles in collision, must be anticipated by the prudent driver in the exercise of ordinary care.

If one could know in advance the location and nature of dangerous impediments which lay ahead of him as he proceeded down a highway, the maintenance of a proper lookout would not be so necessary and important. It is because we cannot possibly foresee or anticipate the dangers which may lie ahead that the law imposes a duty upon each of us to maintain a proper lookout in order that we may observe such dangers in time to stop, turn or take some other evasive action.

In the light of the entire record we have concluded that the findings of the jury are not against the great weight and preponderance of the evidence. To the contrary, we

find the submission of the issues and the jury's answers thereto are amply supported thereby. We have carefully examined each of appellants' points of error, including those concerning foreseeability and causation and having concluded that each should be, the same are accordingly overruled.

In view of our disposition of this case we deem it inadvisable to lengthen our opinion by further discussion of appellants' points or by any discussion of appellees' counterpoints.

The judgment of the trial court is accordingly affirmed.

Affirmed.