Leonora MELANSON et vir, Appellants,

v.

Robert W. TURNER, Appellee.

No. 16980.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 27, 1968.

Farrar & Claunch, and Jim Claunch, Fort Worth, for appellants.

Herrick & Waltrip, and Bill Waltrip, Fort Worth, for appellee.

## OPINION

RENFRO, Justice.

The plaintiff, Robert W. Turner, obtained a verdict and judgment against defendant, Leonora Melanson, in the amount of $323.50 for medical and hospital expenses, and $9,720.00 for physical and mental pain, past and future, and loss of earnings from date of accident to date of trial.

The injury occurred as a result of a station wagon-motor bike collision, the vehicles being operated by the respective parties.

Defendant appealed on two points of error only: (a) answer to issue No. 9 ($9,-720.00) is against the preponderance of the evidence and manifestly too large, and (b) evidence insufficient to support the answer to issue No. 9.

In her prayer in this court, defendant asks for a new trial, or, alternatively, for a remittitur.

■ "Insufficient evidence" points may, and should be, sustained when the record discloses either of the following situations: (a) the evidence is factually insufficient to support a finding of a vital fact, or (b) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Robert W. Calvert, 38 Tex.Law Rev., April, 1960, p. 361.

■ A cursory reading of the statement of facts negatives any claim that the evidence was insufficient to support a finding of a vital fact, i. e., some injury sustained by plaintiff. Hence, we will consider all the evidence to determine whether the amount of damages found by the jury was so against the great weight and preponderance of the evidence as to be clearly wrong.

Defendant testified that after her car struck plaintiff's motor bike she wanted to know if he was hurt. In answer to her query, he answered, "No, * * *."

Plaintiff testified: he is twenty-one years of age. The accident occurred about 9:00 P.M., June 13, 1967. After the accident he got up from the ground and talked to defendant; at that time only signs of injury were bruises and scrapes on elbows and ankles. He was not able to drive home. The next morning his lower back hurt so he could hardly move, "couldn't bend." He went to Dr. McGrath, who sent him to the Fort Worth Osteopathic Hospital where he remained five days. During hospital stay he was in traction and had back treatments. He was in traction device with weights on it. Pain pills were administered at hospital. After missing five days he went back to work at General Dynamics at three dollars per hour. As of time of trial, April, 1968, when he tries "to do anything or bend over" his back begins to bother. He stands at work. Before the accident he never had a back problem. Now his back bothers him in the mornings and sometimes in the evening. It happens several days each week. His "legs hurt and right in the middle of my back * * hurts pretty bad and I get headaches." He takes no medication—nothing he tries seems to help. He has twelfth grade education, and has done nothing but manual labor. He has no training for any other kind of work. At scene of accident he told

three people he did not think he was hurt. He went to Dr. McGrath because the doctor had "doctored" his sister. He had no broken bones, took no injections. Several days after the accident he got a release from Dr. Pullum (associate of Dr. McGrath) so he could go back to work. He is disabled to a certain extent. He returned to Dr. McGrath in August because he was "real dizzy," "had headaches," "shoulders ached," "neck was sore and my back was hurting." He never had those problems prior to the accident.

Dr. Pullum testified: Plaintiff came to him on 6–14–67 with low back and right hip problem. Examination disclosed the "Achilles on the right was diminished." Lasegue test was given. Plaintiff had lumbo-sacro sprain, that is, a sprain of the muscles or ligaments in the lower portion of the back, "the lumbar vertebra where it associates with the sacro, at the very bottom, and is held together there by the muscles and tendons." The muscles, tendons and ligaments in that area had been stretched beyond their capacity. The accident, in witness' opinion, caused those injuries. Witness prescribed sedation, traction, muscle relaxants and "that type of thing." Muscle spasm was present in lumbo-sacro, ileo, lumbar and sacroiliac area which is the very low part, and can result in pain and discomfort. Witness believes plaintiff has reached a plateau of healing and his future is "undeterminable." Future condition depends on what plaintiff does and refrains from doing. He does not think plaintiff will get any better. During his examination and treatment of plaintiff he found no fracture or dislocation. He never prescribed a brace or support. The kind of injuries sustained by plaintiff does not appear on x-rays.

■ In determining whether a verdict is against the great weight and preponderance of the evidence, the Court of Civil Appeals is required to consider and weigh all the evidence in the case. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). This we have done.

We have before us a "clean" record, that is, no objections to testimony, no objections to the charge. No indication the jury considered improper evidence or was influenced by prejudice, bias, etc.

We do not have in this case any manifestation of passion, prejudice or other influence which would require a new trial. Defendant tried and failed to find jury misconduct. Both parties are young working people. There is nothing n the record which is indicative of any reason why the jury would prefer one over the other.

■ The jury was quite generous, but the amount of the verdict does not, as a matter of law, and without any other proof thereof, establish bias on the part of the jury. 17 Tex.Jur.2d 411, § 336.

The only question before us, then, is whether in our judgment the judgment is excessive, and to determine this question we have a statement of facts showing a trial without injection of any prejudicial, improper or hearsay evidence.

In 1916 the Supreme Court spelled out the duty of a court of civil appeals in a situation like the one facing us. Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993. Referring to Art. 1631, V.S.A.C.S., (1914), now Rules 439 and 440, Texas Rules of Civil Procedure, the Court held: "All the Court of Civil Appeals can do, and all that is required of it to do, by said statute, is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess. The court must first determine what amount would be reasonable, before it can determine what amount would be unreasonable. Texas & New Orleans Ry. v. Syfan, 91 Tex. 562, 44 S.W. 1064. Having determined that the verdict

is excessive, or unreasonable, it is necessarily implied that the court has decided upon an amount that would be reasonable compensation for the injury which was actually suffered, in which event it should authorize a remittitur of the excess above the amount which would be reasonable compensation for the injury, in accordance with its sound judgment. We think that in the practical administration of justice this is all that is required of the court to do in such cases, but we believe this much is the mandatory requirement of the statute quoted."

This rule was reaffirmed by the Supreme Court in Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959).

In making our determination whether a verdict is excessive we must observe certain fundamental rules.

■  In personal injury actions the amount of damages to be awarded rests primarily in the discretion of the jury. 17 Tex.Jur.2d 408, § 335.

■  Courts take into consideration increased cost of living and diminished purchasing power of money when comparing present day verdicts with verdicts for like injuries in prior years. Fort Worth & Denver City Ry. Co. v. Gifford, 252 S.W. 2d 204 (Tex.Civ.App., 1952, no writ hist.); Thompson v. Goode, 221 S.W.2d 569 (Tex.Civ.App., 1949, ref., n. r. e.).

■  The issue as to excessiveness must be determined by the evidence in the particular case. Missouri-Kansas-Texas R. Co. of Texas v. Webb, 229 S.W.2d 204 (Tex.Civ.App., 1950, ref., n. r. e.).

■  Evaluation of the physical pain and mental suffering of plaintiff, past and future, was a matter resting in the sound discretion of the jury. Prater v. Holbrook, 283 S.W.2d 263 (Tex.Civ.App., 1955, no writ hist.).

We have set out all the material testimony regarding plaintiff's injury. The doc-

tor witness testified, as we have noted, that plaintiff's condition, in his opinion, will not improve.

The jury saw and observed plaintiff during the trial. They heard his testimony. The credibility and weight to be given plaintiff's testimony was within the province of the jury.

In view of the whole record, and in view of the cited authorities, we are unwilling to say the verdict was so excessive as to require us to order a remittitur. Phillips Petroleum Co. v. Burkett, 337 S.W.2d 856 (Tex.Civ.App., 1960, ref., n. r. e.).

Defendant's points of error are overruled, and her alternative plea for order of remittitur is denied.

Affirmed.