Joan B. REDDICK et al., Appellants,

v.

Oscar H. LINDQUIST et ux., Appellees.

No. 17329.

Court of Civil Appeals of Texas,
Fort Worth.

July 21, 1972.

Rehearing Denied Sept. 15, 1972.

Law, Snakard, Brown & Gambill, and Terry Gardner, Fort Worth, for appellants.

Storey, Armstrong & Steger, and Francis W. Thayer and Robert M. Martin, Jr., Dallas, for appellees.

## OPINION

BREWSTER, Justice.

While being towed on water skis behind a boat, Michael I. Reddick fell into the water. Another boat, owned by Oscar and Marilyn Lindquist, and at the time being driven by Marilyn Lindquist, then ran over Mr. Reddick and the propeller of the boat inflicted injuries that later caused Reddick's death.

Joan B. Reddick brought this suit for herself and as next friend of her minor son, Kevin Reddick, against Oscar and Marilyn Lindquist (husband and wife) seeking to recover damages resulting from the death of Michael I. Reddick, who had been the husband of Joan Reddick and the father of Kevin Reddick. The plaintiffs contended that Marilyn Lindquist's negligence proximately caused Michael Reddick's death and the defendants contended that plaintiffs could not recover because Michael Reddick did, upon the occasion in question, himself, commit negligent acts that proximately caused his death.

A jury trial was had and the jury found that Marilyn Lindquist committed negligent acts that proximately ˋcaused injuries to and the death of Reddick. These findings are not questioned on this appeal. The jury found that Michael Reddick was also negligent upon the occasion in that (1) he failed to keep a proper lookout and (2) he engaged in crossing the wake of the boat towing him at a time when a person using ordinary care would not have engaged in such a maneuver. Each such act of negligence was found to be a proximate cause of Michael Reddick's injuries and death.

The trial court, because of the contributory negligence findings, rendered judgment for the defendants and the plaintiffs have appealed.

We affirm.

Special Issue No. 23 inquired in substance whether Reddick crossed the wake of the boat towing him, under circumstances where a person using ordinary care would not have engaged in such a maneuver. The jury answered "We do." Issue No. 24 asked whether that act was negligence and Issue No. 25 asked whether that negligence was a proximate cause of the occurrence in question. The jury found the act to be contributory negligence and a proximate cause of the occurrence.

In plaintiffs' first six points of error they contend that the trial court erred in failing to grant their motion to disregard the jury's answers to each of those three special issues because (1) there was no ev-

idence to support such answers and (2) because the evidence was insufficient to support such answers.

Special Issue No. 21 inquired as to whether Michael Reddick failed to keep a proper lookout upon the occasion and No. 22 inquired whether such failure was a proximate cause of the occurrence in question. The jury answered both of those issues in the affirmative.

In plaintiffs' point of error No. 8 they contend that the court erred in failing to grant their motion to disregard the jury's answer to Issue No. 21 because, as a matter of law, Reddick could not have been negligent in failing to keep a proper lookout because even if he had seen the Lindquist boat he could have done nothing besides what he did do in trying to save himself.

In their point of error No. 9 plaintiffs contend that the trial court erred in failing to disregard the jury's answer to Issue No. 22 because even if Reddick did fail to keep a proper lookout such failure, as a matter of law, could not have proximately caused the occurrence, because even if he had seen the Lindquist boat there was nothing he could have done to have avoided being run over.

We overrule plaintiffs' points of error 1 through 6, inclusive, and their points of error Nos. 8 and 9.

In considering these points we have reviewed the entire record.

There was evidence in the record tending to show the following: that Mr. Reddick was trying to improve his skiing form that day; a Mr. Mitchell, who was a fine skier, was in their boat facing Reddick so that he could see and criticize Reddick in the event he was doing anything wrong; a Mr. Christian was driving the boat towing Reddick; the Lindquist boat and the one towing Reddick reached the mouth of the slough they were coming out of on Lake Grapevine at about the same time; at this point the Lindquist boat turned left and started approaching the boat towing Reddick at a 90 degree angle; the Lindquist boat was not going fast and the one towing Reddick was going 22 to 24 miles per hour; it appeared to Marilyn Lindquist that Reddick had room to pass safely by and that he was safely up on his skis, and in control of the situation but she decided to cut to the left to give him more room; when she did this she glanced over her left shoulder and behind her to see that she was not cutting into the path of an oncoming boat; Reddick was skiing on a slalom ski which is a single ski where the skier places one foot on the ski directly in back of the other; when Mrs. Lindquist saw Reddick, before glancing back, he was directly behind the towboat, but as she glanced back Reddick started skiing out to the right behind his towboat, over its wake and generally in the direction of the oncoming Lindquist boat; this was a rapid movement to the right and could have been caused by Reddick pulling strongly on his tow rope and heading his ski to the right; there is a trough behind the towboat and a wake or a hump of water to each side; as Reddick crossed his boat's right wake he lost his balance and fell into the water; Reddick fell while Mrs. Lindquist was glancing over her shoulder and she did not know that he fell; when she looked back around her boat blocked her view of Reddick; she did not see him until a moment before she hit him; her husband warned her of Reddick's presence in the water and she immediately took evasive action by cutting sharply to the left but it was too late; when Reddick fell it appeared that he then started looking for and trying to retrieve his ski; he appeared not to see the Lindquist boat; after Reddick fell he was making moves to go get his ski; Reddick must have heard the Lindquist boat before he saw it for he gave no indication of knowing of its presence until he suddenly wheeled to his left just before he was hit; during all this time there was nothing but open water between Reddick and the Lindquist boat and there was nothing to block Reddick's view of that boat; there

was nothing to keep him from looking in that direction; the least likely place for a skier to fall is directly behind the boat or outside the wakes; it is not unusual for a slalom skier to lose his balance and fall and this is true of the best skiers; and Mr. Reddick was the perfectionist type who wanted to do everything just right and that was why he wanted Mr. Mitchell to watch his movements and criticize him if he did anything wrong.

We hold that there was evidence to support the jury's answers to Issues Nos. 23, 24 and 25 and that there was sufficient evidence to support the jury's answers to such issues.

A Court of Civil Appeals, when affirming a case in which sufficiency of the evidence points are involved, is not required to set out the evidence pro and con on the issue and we will not attempt to do so any more than we already have. See Jackson v. International Service Insurance Co., 450 S.W.2d 896 (Fort Worth, Tex. Civ.App., 1970, ref., n. r. e.) and cases there cited.

A person engaged in the sport of water skiing has a duty to keep a proper lookout for his own safety. Harrop v. Beckman, 15 Utah 2d 78, 387 P.2d 554 (1963).

The plaintiffs on this appeal contend that even if Reddick did fail to keep a proper lookout on this occasion that, as a matter of law, such negligence could not have been a proximate cause of the occurrence because the evidence showed that there was nothing he could have done other than what he did do to try to avoid being hit by the boat.

In Lynch v. Ricketts, 314 S.W.2d 273 (Tex.Sup., 1958) was involved the question of whether the evidence raised the issue of proper lookout and proximate cause. It was a car wreck case and the court said at page 275: "In a case of this character, standards of ordinary care such as the direction and extent of the observation which Mrs. Ricketts should have made at any particular time cannot be fixed with any degree of certainty but must be left in large measure to the trier of fact. It is well settled, moreover, that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as direct evidence. . . . The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301, therefore, if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same."

And at page 276 of that opinion the court further said: "It was within the province of the jury, therefore, to determine whether by maintaining a proper lookout a person in Mrs. Ricketts' position could and would have seen and appreciated the danger in time to avoid the collision . . . ."

Mr. Reddick was wearing a life jacket at the time in question and it was introduced into evidence by the plaintiffs. It is not a thick cumbersome thing, but is lightweight and of such a nature that one wearing it can maneuver in the water. There was evidence to the effect that Reddick did maneuver in the water with it on in that he went to retrieve his ski after he lost it in the fall. Pictures are in evidence that show the length and width of the Lindquist boat.

We hold that the evidence did not show as a matter of law that Mr. Reddick could not have avoided the accident if he had kept a proper lookout on the occasion in question.

The jury could have believed that had Reddick kept a proper lookout that he could have seen the Lindquist boat in time to have avoided being hit by such boat by

swimming from the boat's path, or by delaying his rapid maneuver to the right and across the boat's wake until after the Lindquist boat passed out of the way, or by refraining from retrieving his ski until after he got out of the way of the oncoming boat.

The evidence here presented a fact issue for the jury's determination as to whether or not Reddick's failure to keep a proper lookout was a proximate cause of the occurrence.

In plaintiffs' point of error No. 7 they contend that the court erred in submitting Special Issue No. 23 to the jury because, as worded, the issue assumed that Reddick was aware of the presence of the Lindquist boat and was therefore a comment on the weight of the evidence.

We overrule this point of error.

Issue No. 23 was worded as follows: "Do you find from a preponderance of the evidence that on the occasion in question Michael Reddick was engaging in a maneuver, to-wit, crossing the wake of the boat towing him, under circumstances where a person using ordinary care would not have engaged in such maneuver?"

We hold that this Issue No. 23, as worded, does not assume that Reddick was aware of the presence of the Lindquist boat. It does not comment on the weight of the evidence by indicating to the jury that the court was of the opinion that Reddick was aware of the presence of the Lindquist boat. See Pharr v. Coldeway, 256 S.W.2d 917 (Amarillo, Tex.Civ.App., 1952, no writ hist.) and Roy Lee Lumber Company v. Green, 299 S.W.2d 349 (Beaumont, Tex.Civ.App., 1957, ref., n. r. e.). This issue, as worded, does not indicate to the jury, one way or the other, what the court's opinion was about, whether or not Reddick knew of the presence of the Lindquist boat.

We are also convinced that even if this issue was erroneous in the respects contended for by plaintiffs that the error was harmless. The record bears this out because the jury found that Reddick did not keep a proper lookout and in effect thereby found that Reddick did not know of the presence of the Lindquist boat until just before he was hit.

In their point of error No. 10 plaintiffs contend that the court erred in failing to sustain their motion to disregard the jury's answers to Issues Nos. 23, 24 and 25 for the reason that such answers are in direct conflict with the jury's answer to Issue No. 40.

We overrule plaintiffs' point of error No. 10.

By their answers to Issues Nos. 23, 24 and 25 the jury found that Reddick's maneuver of crossing the right wake of his towboat at the time he fell, just before being hurt, was negligence and a proximate cause of the occurrence in question.

Issue No. 40 inquired: "Do you find from a preponderance of the evidence that the act of Jack Christian (the driver of the Reddick towboat) in turning the boat to the left at the time and place that he did was negligence?" The jury answered "It was not."

There was evidence to the effect that shortly before Reddick fell Christian had turned the boat towing Reddick to the left.

We hold that the jury's answers to Issues Nos. 23, 24 and 25 do not conflict with their answer to Issue No. 40.

The jury could have concluded from the evidence offered that Reddick was not compelled to involuntarily cross the right wake of his towboat by the left turn of the boat that Christian made on the occasion. There was evidence that a skier can stay behind a boat during a turn.

The judgment is affirmed.