**Bob HAMMOND, dba Bob Hammond Shows, Appellants,**

v.

**Hazel STRICKLEN et vir, Appellees.**

**No. 683.**

Court of Civil Appeals of Texas, Tyler.

Aug. 2, 1973.

Rehearing Denied Aug. 30, 1973.

Tom Lorance, Lorance & Thompson, Houston, for appellants.

John M. O'Quinn, Brown, Kronzer, Abraham, Watkins & Steely, Houston, R. E. Swift, Palestine, for appellees.

DUNAGAN, Chief Justice.

This suit was brought by Hazel Stricklen, et vir, against Bob Hammond, dba Bob Hammond Shows, in the 87th District Court of Anderson County, Texas, seeking damages for personal injuries sustained by her when her automobile went out of control, left the roadway, and struck a tree to avoid a collision with one of appellant's large tractor-trailer units obstructing the highway. The case was submitted to the jury on thirteen special issues. In all respects the jury verdict was favorable to appellees, and following a remittitur of certain medical and hospital expenses awarded by the jury, a judgment in the amount of $66,565.20 was entered against appellant. This appeal results.

Hereafter appellant will be referred to as "Hammond Shows" and appellee, Hazel Stricklen, as "Mrs. Stricklen."

Appellant contends that there is no probative evidence raising the issues and supporting the findings of the jury or that the

jury's answers in response to Special Issues Nos. 1 through 11 are contrary to the great weight and overwhelming preponderance of the evidence and are manifestly wrong and unjust and that the court erred in entering judgment on the jury's answers to said special issues.

When the assignment is that there is "no evidence," the reviewing court may consider only that evidence, if any, which viewed in its most favorable light, supports the jury findings and we must disregard all evidence which would lead to a contrary result. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957). When the contention is made that the evidence is insufficient to support the jury findings, or the findings are against the great weight and preponderance of the evidence, a court of civil appeals must examine all of the evidence and reverse and remand for a new trial if it concludes that the verdict or finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In Re King's Estate, 150 Tex. 662, 244 S. W.2d 660 (1951).

Because it was undisputed that one-half of the east-bound lane of travel (Mrs. Stricklen's lane) was obstructed by the presence of the truck-trailer unit across the highway, no special issue was submitted inquiring whether the truck was caused to be moved across the centerline or was not entirely within the right half of the roadway. Special Issue No. 1 inquires as to whether the "failure * * * to keep the Defendant's (Hammond Shows) truck completely within his right-hand half of the roadway was a proximate cause of the occurrence * * *." The jury responded affirmatively.

Special Issue No. 2 inquired as to whether Hammond Shows failed to give "adequate warning," and the term "adequate warning" was defined as the type of warning that a reasonably prudent person would give under the same or similar circumstances. The jury's answer to Special Issue No. 2 and Special Issue No. 3 (the "proximate cause" issues) was in the affirmative.

Special Issues Nos. 4 through 11 were contributory negligence issues and inquired whether Mrs. Stricklen's failure to slow down was negligence, whether she kept a proper lookout, whether she was operating her vehicle at an excessive rate of speed, and whether she failed to make a proper application of the brakes. The jury answered negatively to these special issues, and were, therefore, not required to answer the various proximate cause issues predicated upon affirmative answers to these inquiries.

Special Issues Nos. 12 and 13 inquired as to what monetary damages Mrs. Stricklen suffered, if any, as a result of the accident in question.

The accident occurred on May 11th, 1969, and at the time Mrs. Stricklen was forty-five years of age. The highway where the accident occurred consists of two traveled lanes.

Kenneth Ray Buckhanan, who was the investigating Highway Patrolman, testified that he arrived at the scene and the driver of the truck identified himself. He also testified that each lane of travel was 11 feet to 12½ feet wide; that there was a rather steep hill down which Mrs. Stricklen would be proceeding just prior to the crash. He found her car in the right-hand ditch and she had collided with a tree. He also found that the truck was across the highway with the rear duals off in the ditch and that the traffic had to get completely off the roadway to pass the truck. He further testified that the front end of the truck was some six inches to sixteen inches off the pavement on the right considering the direction of Mrs. Stricklen's travel. From Mr. Buckhanan's testimony it would appear that the truck effectively blocked the east-bound lane.

Buckhanan testified that "the only way a car could get around in front of the truck was to go on the shoulder with all four wheels." From this evidence it would be necessary for Mrs. Stricklen to drive her automobile on the shoulder of the highway to avoid a collision with the truck-trailer unit. He testified that the crest of the hill was some 300 to 400 feet from the truck and that at 60 miles per hour (the speed she said she was moving) the normal stopping distance would be some 350 feet; that in addition to being harder to stop going downhill, also the coefficient of friction was effected by the fact that this was an older road; that it was hot weather and there was therefore not much grass on the shoulder; that it was an iron ore shoulder with little traction; and that Mrs. Stricklen's skidmarks did not indicate she was speeding.

Appellant's witness, Eugene Hammond, the son of the owner of Bob Hammond Shows, appellant, who was at the scene when the wreck occurred testified there was not enough room for a vehicle approaching in the eastbound lane to travel around in front of the truck without getting on to the shoulder. He realized the truck was a hazard and told another employee, David Kitchens, to take a man with him and go to the top of the hill to "watch for traffic." He took this precaution because he "appreciated the truck was a danger" and that somebody could "lose control." He further testified that Kitchens and the other man (Robert Yoder) took two flares and two flags to the crest of the hill.

Appellant's witness, David Kitchens, testified that he observed Mrs. Stricklen coming over the top of the hill and that Yoder was signaling her with reflectors in his hand and was standing in the middle of the east-bound lane of traffic; that he saw Yoder run and about that time he saw Mrs. Stricklen's vehicle come into view and then "you could hear her loud squealing noises" which were her brakes being applied. He saw her hit the tree after she slid off the pavement. He also testified that Yoder was a little "greasy and oily" and "a little bit dirty."

Officer Buckhanan described the man who identified himself to him as the one who was up on the hill stopping traffic, as wearing blue jeans and had on a shirt "that was open down the front and had long hair and was dirty."

Mrs. Stricklen testified that as she approached the area she saw a man "that was waving me down" on the shoulder at the top of the hill. He had no flag or warning device, his shirt was unbuttoned and he had long hair and whiskers and she simply "did not slow down for him" because she thought he was trying to get a ride and was fearful of bodily harm. She said she was not "about to stop for him." Her testimony also shows that she was traveling about 60 miles per hour as she crested the hill, and as she came over the top she saw the truck-trailer unit "across the road." She exclaimed "Oh, my God," and then tried to keep from crashing into the truck. She applied her brakes with all her strength and her car started skidding. When she got on the shoulder she lost control and struck the tree.

On cross-examination she testified that the man on the hill had nothing in his hand and he did not run as she went past him; that because of her apprehension concerning the man on the hill, she did not slow down. She described the man as one who "needed a haircut pretty bad;" that she got on her brakes "instantly" and she estimated that she traveled 150 feet from the top of the hill to the tree which she struck; that she tried her best to stop before hitting the tree but could not do so as she "lost control" when she went off the pavement.

Portions of Mrs. Stricklen's deposition were offered by appellant wherein she testified that the employee of appellant was not at the top of the hill as she approached but was approximately 100 feet away; that when she crested the hill and saw the

truck-trailer unit at the bottom she then "realized what he was trying to do."

There is other evidence in the record, in our opinion, supporting the jury's findings but we will not unduly lengthen this opinion to detail such testimony. Appellant's testimony conflicts with that offered on behalf of appellee.

■ The court of civil appeals, when affirming a case in which sufficiency of evidence points are involved, is not required to set out the evidence pro and con on the issue and will not do so anymore than we already have. Reddick v. Lindquist, 484 S.W.2d 441 (Tex.Civ.App., Ft. Worth, 1972), and Jackson v. International Service Insurance Company, 450 S.W. 2d 896 (Tex.Civ.App., Ft. Worth, 1970, writ ref'd n.r.e.).

It was within the jury's province, as the trier of the facts, to judge the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses or to believe one witness and disbelieve another, or to believe part of the testimony of the witness and disbelieve any other part. Schwab v. Stewart, 387 S.W.2d 939, 943 (Tex.Civ.App., Amarillo, 1964, writ ref'd n.r.e., 390 S.W.2d 752); Peck v. Century Concrete Products, Inc., 375 S.W.2d 459, 462 (Tex.Civ.App., Ft. Worth, 1964, writ ref'd n.r.e.); Martin v. J. S. Hunt Lumber Co., Inc., 180 S.W.2d 956 (Tex.Civ.App., Waco, 1944, n.w.h.).

■ This court has the power to grant a new trial where the finding of the jury or the court is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust, but we are not authorized to substitute our judgment for that of the jury or the court simply because we might have reached a different conclusion on the facts. Donnell v. Acker, 343 S.W.2d 718 (Tex. Civ.App., Houston, 1961, n.w.h.); Continental Bus System, Inc. v. Biggers, 322 S. W.2d 1 (Tex.Civ.App., Houston, 1959, writ ref'd n.r.e.); Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950); Hunt v. Joske Bros. Co., 300 S.W. 201 (Tex.Civ.App., San Antonio, 1927, writ dism.); 4 McDonald Texas Civil Practice, sec. 18.15, p. 279; Rule 328, Texas Rules of Civil Procedure.

■ We have carefully examined the entire record in the case and conclude that there is sufficient evidence in the record to support the jury's findings and that such findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong.

Appellant next contends that the court erred in permitting appellee to prove that its witness, Tom Peyton, was employed by the insurance carrier for appellant.

Appellee contends that such evidence was admissible to demonstrate bias and interest in connection with his testimony.

It was developed on direct examination of Peyton that he was employed as an investigator at the time of the accident and that he investigated such accident a few days after it occurred. He testified he found skidmarks leading to the tree at the scene. He also testified in regard to certain measurements of the skidmarks which he made at the time of his investigation at the scene and distances ascertained from such measurements. He gave other testimony concerning the tree and the scar he found thereon.

On cross-examination over appellant's strenuous objection the court permitted appellee to prove that the witness Peyton was employed by the insurance carrier for appellant.

■ The law seems to be well established that facts tending to show interest, bias, or a motive on part of witness may be solicited on cross-examination, even though such examination may necessarily disclose that defendant in personal-injury action is protected by insurance, since many facts wholly immaterial, and even

positively prejudicial on main issues of case, may be material as touching credibility of witness. South Texas Natural Gas Gathering Co. v. Guerra, 469 S.W.2d 899, 914 (Tex.Civ.App., Corpus Christi, 1971, writ ref'd n.r.e.); Barton Plumbing Company v. Johnson, 285 S.W.2d 780 (Tex. Civ.App., Galveston, 1955, writ ref'd); Pattison v. Highway Insurance Underwriters, 278 S.W.2d 207 (Tex.Civ.App., Galveston, 1955, writ ref'd n.r.e.); Aguilera v. Reynolds Well Service, Inc., 234 S.W.2d 282 (Tex.Civ.App., San Antonio, 1950, writ ref'd).

Justice Norvell, while Associate Justice of the San Antonio Court of Civil Appeals in Aguilera v. Reynolds Well Service, Inc., supra, speaking for the court, used the following language: "We are unwilling to hold that an agent of an insurance company which is a real party at interest may take the stand as an apparently disinterested witness, give testimony damaging to the opposing party, and then be exempt from cross-examination designed to show his connection with the company."

■ On cross-examination of an adverse witness, anything may be shown which might affect the witness' credibility, such as bias, interest and prejudice and a wide latitude is allowed in such matters. Walker v. Missouri Pacific Railroad Company, 425 S.W.2d 462 (Tex.Civ.App., Houston 14th Dist., 1968, writ ref'd n.r.e.). Appellant's contention is overruled.

■ When the real party in interest places one of its own on the witness stand for the purpose of undertaking to establish what it conceives to be vital evidence in its favor, it necessarily subjects itself to proof touching upon the bias, interest or motive of that witness. Nor can such party shield itself by suggesting that all that is necessary is to establish that he is a "defense witness" employed to "investigate" the accident. Aguilera v. Reynolds Well Service, Inc., supra.

The appellant further contends that the damages awarded appellees are excessive. There is testimony in the record that the damage to Mrs. Stricklen's car was quite substantial; that immediately following the accident Mrs. Stricklen was taken to the hospital where she was hospitalized for approximately a week. After her discharge from the hospital she stayed at her home and tried to take care of herself. All she was able to do was a small amount of cooking. She had suffered from ulcers prior to the accident but they had cleared up and she was doing fine. In the latter part of the year she tried to return to work at a rest home and stayed there for approximately three weeks and left her work because she "could not hold out." She sustained so much pain and discomfort that she was required to quit. She also worked for Mrs. Wallace at the Dairy Queen but she still had pain in her back, her neck and her ribs. She stated, "I cannot lift, it hurts my back and my ribs." She testified she could not mop up or sweep anymore and that such work as she did for Mrs. Wallace was less strenuous and she worked less hours; that the injuries have affected her housework and the other enjoyments of living. While she has some pretty good days, the problems she has are more or less continuous. She continues to suffer from neck and back pain, as well as pain in the rib area where she sustained the fractured ribs; that her back and neck were not improving "a whole lot" and it worried her "because I can't go on like I have and need to." She was hospitalized on three occasions following the accident.

Mrs. Stricklen's testimony was substantiated by her husband; Mrs. Morgan, the administrator of the rest home where she worked for a short period of time in January, 1970; and Mrs. Wallace, her employer at the Dairy Queen.

Mrs. Wallace first employed Mrs. Stricklen in 1968. She was then a full-time employee. She testified that Mrs. Stricklen had no physical troubles. She was off approximately a year after her accident; that she cannot work as many hours as she could before the accident; and that she tires very easily.

Three doctors testified by deposition. Dr. James Taylor saw her in the emergency room on the day of the accident for treatment of injuries she received in an automobile accident, at which time she was having severe pain in the left chest. He found objective signs of tenderness in the lower thoracic and upper lumbar and in the left rib cage from the eighth rib on down; that there was a fracture of the seventh rib; and a "back strain was evident."

Dr. L. L. Travis, a general surgeon, first saw her on August 12, 1969, at which time she gave him a history of the accident along with her back and neck complaints. She came to see him for her activated stomach ulcer. He hospitalized her from August 12th to August 20th, 1969. She was having no symptoms from the ulcer at the time of the wreck and had been in the clinic in February and May of 1968. It was his opinion that the difficulties she was having with her ulcer "flared up as a result of the accident."

Dr. Burton Crain first saw her on February 16, 1970, and hospitalized her on that date, where she remained until February 21st. She had recently developed more pain in the neck which radiated primarily into her left shoulder. Motion of the neck and arm made it worse, and also she had difficulties if she remained still for a long period of time. She had received therapy before she saw him. He diagnosed her condition as being a whiplash injury, an acute duodenal ulcer, and an endogenous syndrome; that all these matters were related to the accident.

The burden of establishing that the jury's evaluation of damages is erroneous is upon the complaining party. City of Austin v. Selter, 415 S.W.2d 489, 502 (Tex.Civ.App., Austin, 1967, writ ref'd n. r. e.); Evans v. Rush, 254 S.W.2d 799 (Tex. Civ.App., Amarillo, 1952, n.w.h.); City of Dallas v. Hutchins, 226 S.W.2d 155 (Tex. Civ.App., Amarillo, 1949, writ ref'd n.r.e.).

In determining whether a verdict is "excessive" the courts must review only that evidence favorable to the award, and the findings of the jury thereon will not be disturbed on ground of "excessiveness" if there is any evidence to sustain the award; they will not merely interfere and substitute their judgments, nor is it material that the courts might have awarded a lesser sum as fact finders; there must be some circumstantial indication of bias or prejudice; matters of pain, suffering, and general damages are pecularily within the discretion of the jury; and in the absence of an affirmative showing of bias or prejudice the courts of civil appeals will give every intendment to the evidence supporting the verdict. Chemical Express v. Cole, 342 S.W.2d 773, 780 (Tex.Civ.App., Dallas, 1961, writ ref'd n.r.e.); City of Austin v. Selter, supra; Green v. Rudsenske, 320 S.W.2d 228, 235 (Tex.Civ.App., San Antonio, 1959, n.w.h.); Missouri Pacific Railroad Co. v. Miller, 426 S.W.2d 569, 571 (Tex.Civ.App., San Antonio, 1968, n.w.h.); Grace v. Starrett, 411 S.W.2d 774, 778 (Tex.Civ.App., Dallas, 1967, writ ref'd n.r.e.); Gulf, Colorado & Santa Fe Railway Co. v. Hampton, 358 S.W.2d 690 (Tex.Civ.App., Eastland, 1962, writ ref'd n.r.e.); Port Terminal Railroad Association v. Macaluso, 450 S.W.2d 873 (Tex. Civ.App., Houston 1st, 1970, n. w.h.); Texas and Pacific Railway Company v. Salazar, 458 S.W.2d 116, 123 (Tex.Civ.App., El Paso, 1970, writ ref'd n.r.e.); Boddy v. Canteau, 441 S.W.2d 906, 914 (Tex.Civ. App., San Antonio, 1969, writ ref'd n.r.e.); Melanson v. Turner, 436 S.W.2d 197, 200 (Tex.Civ.App., Ft. Worth, 1968, n.w.h.); Bill Hendrix Auto Parts v. Blackburn, 433 S.W.2d 237, 241 (Tex.Civ.App., Houston, 14th Dist., 1968, n.w.h.); Pioneer Bus Company v. Ward, 422 S.W.2d 550, 552 (Tex.Civ.App., Houston, 14th Dist., 1967, n.w.h.); Sunset Brick & Tile, Inc. v. Miles, 430 S.W.2d 388, 393 (Tex.Civ.App., Corpus Christi, 1968, writ ref'd n.r.e.); J. A. Robinson Sons, Inc. v. Ellis, 412 S.W.2d 728, 744 (Tex.Civ.App., Amarillo, 1967, writ ref'd n.r.e.).

"The mere fact that the verdict is large is not conclusive that it is the result of passion, prejudice, sympathy or other considerations not found in the evidence."

Union Transport, Inc. v. Braun, 318 S.W. 2d 927 (Tex.Civ.App., Eastland, 1958, n.w. h.).

In awarding damages the jury is entitled to consider the constant decrease in the value of the dollar. Texas Consolidated Transportation Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App., Waco, 1960, writ ref'd n.r.e.) ; City of Austin v. Hoffman, 379 S.W.2d 103 (Tex.Civ.App., Austin, 1964, n.w.h.) ; J. A. Robinson Sons, Inc. v. Ellis, supra; 17 Tex.Jur.2d p. 408, sec. 334.

Personal injury damages being unliquidated and not capable of measurement by any certain standard the jury has large discretion in fixing amount of award. Phillips Petroleum Company v. Burkett, 337 S.W.2d 856 (Tex.Civ.App., Ft. Worth, 1960, writ ref'd n.r.e.). We hold that neither the verdict of the jury nor the judgment of the court is excessive. All of appellants' points of error have been considered and each are overruled.

The judgment of the trial court is affirmed.