MISSOURI PACIFIC RAILROAD COM-
PANY, Appellant,

v.

P. W. HANDLEY, Jr., Appellee.

No. 13660.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 7, 1960.

Rehearing Denied Dec. 21, 1960.

Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, for appellant.

Stahl & Sohn, Robert O'Connor, San Antonio, for appellee.

MURRAY, Chief Justice.

P. W. Handley, Jr., an employee of the Missouri Pacific Railroad, brought this suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for injuries he received when the freight switching movement on which he was working made an emergency stop at a street crossing. Plaintiff, a rear switchman, was riding in the rear box car of sixty cars being transferred from San Fernando Yard to South San Antonio Yard. No caboose was furnished and there was no better place for plaintiff to ride than in the rear box car. When the emergency stop was made the open door of the box car slammed shut on plaintiff's left hand, crushing it and making it necessary to amputate the index and middle fingers and part of the third finger. The jury found defendant liable and awarded plaintiff damages in the sum of $76,860. The trial court entered judgment against defendant for this sum, and Missouri Pacific Railroad Company has prosecuted this appeal.

The only point of error presented by appellant is the alleged excessiveness of the amount of the verdict. The amount of the damages was based upon lost earnings, both past and future, and pain and suffering. The jury having found in appellee's favor, the trial court having based its judgment upon those findings, and having overruled appellant's motion for a new trial, we must view the evidence in a light most favorably to appellee. Appellee had not worked from the time of the injury, November 21, 1958, until the time of the trial, November 25, 1959. Appellee was thirty-seven years of age and married at the time he sustained his injury. The extent of his education was one year in high school. He had worked part time as an usher and electrician's helper in Interstate Theatres, and after leaving school he worked there for two years at full time. In 1938, he enlisted in the U. S. Marine Corps as an infantryman, and after about one year of service he was given a medical discharge on account of flat feet. In June, 1941, he went back to work at the Interstate Theatres, and shortly thereafter obtained employment at Duncan Field (now Kelly Field) as a junior aircraft electrician, civil service employee. Two weeks later he was transferred to Brooks Field, doing the same work and earning $1,500 a year.

In September, 1942, he was drafted into the Army as a private and was wounded in his right leg, for which he has been receiving compensation for 30% disability. He returned to his civil service job at Brooks Field as an aircraft electrician, earning $1,800 per year.

In 1946, he went to work for appellant as a fireman, intending to make railroading his life work. In 1949, he was employed by appellant as a switchman and worked at that job until the time of his injury. Prior to the date of his injury, he had been promoted to a qualified foreman. He was an efficient and faithful railroad employee. He had been free from pain and able to do a full day's work. Except for his leg wound, received in the military service, and a back and wrist injury, he received while working for the railroad in 1951, he was in excellent health on the date he sustained his injury. By reason of his leg wound during the war, he was hospitalized for about two and one-half months but was not classed as disabled, and returned to active duty after being released from the hospital. He is drawing a thirty per cent compensation benefit from the United States Government because he still has metal particles, or pieces of iron shrapnel in his leg. These metal particles did not restrict him in any way in the performance of his work.

On April 9, 1951, while working for the railroad, he was knocked off the top of a box car and sustained a back and wrist injury. Appellee was paid for his lost time and then went back to work. That injury

in no way interfered with his ability to perform his railroad duties, and he was continuously employed by appellant from that time until November 21, 1958, the date of his present accident.

■ By this accident appellee's hand was badly smashed and gave him great pain. He had a gash over his eye and his head was also giving him great pain. His hand has pained him since the injury up to the time of the trial. Since his fingers were amputated he has had additional operations on his hand and the doctors tried a "skin graft" on the back of his hand. The "skin graft" has not proven satisfactory and he still suffers great pain. He still has his thumb and little finger on his left hand, but he gets very little use, if any, out of them. He is unable to grip anything between his thumb and little finger. If he tries to hold a piece of paper it will slip through. He has tried physiotherapy treatments to heal the back of his hand, with little success. His pain and suffering is described in great detail. His inability to use his left hand is very inconvenient and embarrassing to him. He no longer attempts to go hunting and fishing as he formerly did. He can only hold some kind of job that might be held by a one-armed man. He was thirty-seven years of age at the time of the present injury, and has a life expectancy of 31.75 years. But for the injury, he would have earned the sum of $165,100 during his life expectancy. One year's earnings of $5,200 had already accrued at the time of the trial and would not have to be discounted, this would leave the sum of $159,900. With his injury, he would not be able to earn more than $2,000 per year, or a total of $63,500, resulting in a future loss of earnings of $96,400. The present cash value of this amount, using the rate of 3% and the standard compound discount table, would be $61,406, and adding the amount already accrued you have $66,606. This would leave the sum of $10,254 for mental anguish, severe and continued pain and suffering, disfigurement, embarrassment and inability to live a normal life. Thompson

v. Robbins, Tex.Civ.App., 297 S.W.2d 247, affirmed 157 Tex. 463, 304 S.W.2d 111; United States of America v. Puscedu, 5 Cir., 224 F.2d 5. That sum does not have to be discounted. Texas & Pacific Ry. Co. v. Buckles, 5 Cir., 232 F.2d 257, 264; 28 A. L.R. 1174, 1181; 77 A.L.R. 1451; 154 A.L.R. 801.

■ The jury after hearing the witnesses testify and having observed them upon the witness stand, found appellee's damages in the sum of $76,860. The trial court who also heard and observed the witnesses received this verdict and based the judgment upon it. The trial court also overruled appellant's motion for a new trial in which it was contended that the verdict was excessive. We find nothing in the record that would justify us in concluding that the sum fixed by the jury and approved by the trial court was excessive in amount.

■ There is no certain standard by which personal injury damages can be measured. Panos v. Jackson, Tex.Civ.App., 253 S.W.2d 705, 707; Fort Worth & Denver City Ry. Co. v. Gifford, Tex.Civ.App., 252 S.W.2d 204; Loughry v. Hodges, Tex. Civ.App., 215 S.W.2d 669; Gulf C. & S. F. Ry. Co. v. Darrah, Tex.Civ.App., 193 S.W. 253. Each case must stand, more or less, upon its own facts and circumstances and a comparison with other cases and the amount of their verdicts are of little or no help.

In Sharpe v. Munoz, Tex.Civ.App., 256 S.W.2d 890, 892, Justice Pope, speaking for this Court, said: "The assessment of damages is the prerogative of the jury and courts impose their ideas, not as a substitute for the judgment of jurors but to control passion and prejudice." See also, Missouri Pacific R. Co. v. Young, Tex.Civ. App., 335 S.W.2d 679.

In Pruett v. Mabry, Tex.Civ.App., 263 S. W.2d 532, 539, the Court said:

"The matter must of necessity rest largely in the sound discretion of those whose primary duty it is to assess the

damages, and unless the damages awarded are so clearly excessive as to show an abuse of that discretion or as to indicate passion, prejudice, corruption, or a disregard of the evidence, the trial court's award is binding on the appellate court."

Appellee's first and second counter points, relating to the extension of time for filing the Statement of Facts, having heretofore been passed upon by this Court, will be overruled.

The judgment is affirmed.