**BILL HENDRIX AUTO PARTS, Appellant,**

v.

**Homer L. BLACKBURN et ux., Appellees.**

**No. 149.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Oct. 2, 1968.

**238**

Frank M. Bean, Bean & Manning, Houston, for appellant.

Joseph D. Jamail and John Gano, Houston, for appellees.

SAM D. JOHNSON, Justice.

This suit was brought by appellees, Homer L. Blackburn, and wife, Maudene Blackburn, seeking to recover damages for personal injuries allegedly sustained by Maudene Blackburn in a motor vehicle accident occurring August 15, 1966. The accident involved the automobile being driven by Maudene Blackburn and a pick-up truck owned by the appellant, Bill Hendrix Auto Parts. A third vehicle was incidentally involved, that being an automobile being driven by Nan E. Thomas. The Thomas vehicle was struck in the rear by the Blackburn vehicle after it, in turn, had been forcibly struck in the rear by the pick-up truck. The pick-up truck was being operated by Ernest Aubrey Smith, Jr., who was a minor. Smith was, at the time of the accident in question, in the course and scope of his employment for Bill Hendrix Auto Parts.

On trial, the various liability issues were found in favor of the plaintiffs. There was only one damage issue. It contained elements of pain and suffering, mental anguish, loss of capacity to work and perform household duties, and medical expenses. In response to the damage issue, the jury found as its answer $31,500.00. Judgment on the verdict for such sum was entered against the appellant, Bill Hendrix Auto Parts. Motion for new trial was overruled and appeal is perfected to this court.

Appellant presents only one point of error. It is, "The trial court erred in refusing to direct a remittitur where damages awarded for pain and suffering, mental anguish, loss of capacity to work and perform household duties and medical expenses were excessive by at least $16,500.00."

■ Appellees take two positions. First, appellant's single point of error should be disregarded or overruled in view of the fact, as appellees contend, that appellant did not properly seek, nor was he refused, a remittitur in the trial court. The essence of this contention is that appellant's motion for new trial did not comply with rules 320, 321, 324 and 325, Texas Rules of Civil Procedure in seeking a remittitur in the trial court. Appellant's motion for new trial complained that the jury's response to the damage issue was not supported by the evidence, is contrary to the evidence, is not supported by sufficient evidence, is against the overwhelming weight and preponderance of the evidence and "should be set aside and disregarded in that such finding is so excessive as to show that the jury was activated by bias and prejudice and a failure to follow the testimony."

In Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407, the Supreme Court had before it a case in which the motion for new trial complained that the jury's answer to the damage issue was erroneous, that there was

no evidence to support it, and that the jury's finding was "contrary to and opposed to the great mass of the credible testimony and to such an extent that said answer is manifestly wrong, and it is evident that in answering said issue as they did, the jury was not guided by the evidence and the Court's charge, but their answer is based upon, and is the result of, prejudice or sympathy, or passion, or some motive other than a desire to return a verdict based on the evidence and the Court's charge." The Supreme Court there concluded, "It simply cannot be said that the quoted language of the motion mentions in a specific or explicit manner or states precisely that the answer of the jury (to the damage issue) was excessive." In the instant case excessiveness is specified. We believe that such specification is sufficient to fully apprise the trial court of that fact.

It is appellees' position, secondly, that the damages found by the jury are not excessive. This Court is empowered to order a remittitur under Rule 440, T.R.C.P., if we are " * * * of the opinion that the verdict and judgment of the trial court is excessive, and should be reversed for that reason only * * *."

■ There need be no extraneous proof of passion or prejudice. "Neither the rule nor the statutes before it have mentioned 'passion or prejudice' requirement, and the Supreme Court has held specifically more than once that there need not be extraneous proof of passion or prejudice." Smith, Texas Remittitur Practice, 14 Southwestern Law Journal 150. Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835; Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017; World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962 (Tex. Com.App.), Opinion adopted. In the last cited case the Commission of Appeals, at page 964, stated, "It seems to have been assumed in some cases that the inference of passion and prejudice will follow as a necessary conclusion from any finding of excessive damages, and when present vitiates a verdict in its entirety. Such a holding would in effect invalidate our remittitur statutes * * *."

■ This Court is required to exercise its judicial discretion in determining whether the damage award of $31,500.00 exceeds reasonable compensation under the evidence. The Supreme Court generally enunciated the test to be applied in Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993 (1916), when it stated, "All the Court of Civil Appeals can do, and all that is required of it to do * * * is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess. The court must first determine what amount would be reasonable, before it can determine what amount would be unreasonable. Texas & N. O. Ry. Co. v. Syfan, 91 Tex. 562, 44 S.W. 1064 * * * (Having) decided upon an amount that would be reasonable compensation * * * it should authorize a remittitur of the excess * * * in accordance with its sound judgment." The Supreme Court reaffirmed such position in Flanigan v. Carswell, supra, and made it clear that the responsibility of the various Courts of Civil Appeals is the same as the trial court's in this regard.

We are aware of the decisions indicating that there is no certain standard in the measurement of personal injury damages, that each must stand on its own facts and circumstances and that comparison with other cases and verdicts is of little or no help. Missouri Pacific Ry. Co. v. Handley, 341 S.W.2d 203 (Tex.Civ.App.), no writ hist.; Hayter Lumber Co. v. Winder, 295 S.W.2d 730 (Tex.Civ.App.), writ dismd. Based solely on the record before the court, which will be later discussed, we cannot say that the jury's verdict is without justification.

We are likewise aware of the decisions indicating that reasonable uniformity should be obtained in awards for personal injuries. Gilbert v. Haigler, 363 S.W.2d 337 (Tex.Civ.App.), writ ref., n. r. e.; Port

Terminal Railroad Ass'n v. Noland, 288 S.W.2d 276 (Tex.Civ.App.), writ ref., n. r. e.; Kimbriel Produce Co., Inc. v. Webster, 185 S.W.2d 198 (Tex.Civ.App.), writ ref., w. o. m. Taking this approach, the task is made easier because of the exhaustive compilation of cases which have dealt with the question of inadequate or excessive damage awards in 17 Tex.Jur.2d 425, Damages, Sec. 350, and pocket parts thereto. Examining the facts of each individual case we find no significant discrepancy between the amount of damages awarded in the case before the court and the damages awarded in numerous other cases.

■ Taking either approach, we cannot say in the light of all the evidence that the amount awarded by the jury does not constitute fair and reasonable compensation for the injury sustained by the appellee.

■ It is our responsibility to view the evidence and inferences in support of the award in the light most favorable to the award of the jury. Green v. Rudsenske, 320 S.W.2d 228, 235 (Tex.Civ.App.), no writ; Louisiana & A. Ry. Co. v. Chapin, 225 S.W.2d 614, 616 (Tex.Civ.App.), writ ref.; Wells v. Henderson, 78 S.W.2d 683 (Tex.Civ.App.), writ ref.

Doing so, the record establishes that the instant collision resulted when the appellant's pick-up truck struck the Blackburn vehicle from behind without warning. The impact came with such force that the Blackburn car was rammed into the car ahead of it which was being driven by Mrs. Nan E. Thomas. Mrs. Thomas herself suffered whiplash injuries to her neck. Mrs. Blackburn's small son was riding in the vehicle with his mother and the force of the unexpected collision threw his head against the windshield of the car in which he was riding with such force that it broke it out. Appellees' automobile was caved in in the front and rear and was hit with such force as to buckle the car in the middle. The repairs to the Blackburn vehicle cost approximately $450.00.

At the time of the accident Mrs. Blackburn was 29 years of age with a life expectancy exceeding 47 years. Prior to the collision she was in good health. She did all of her own housework, childrearing, yard work, could sew and embroider and carried on all the activities of a normal person in good health. Moreover, she was athletically inclined and capable. The case was tried 17 months after the collision and she had been in constant pain during all that period of time. Subsequent to the collision she is unable to do the things that she formerly did. She must now have her work done by her husband and friends or else hire it done. Her relationship with her husband has changed and she is worried and concerned over her well being and health.

Immediately following the accident, Mrs. Blackburn experienced pain in her neck and told the officer at the scene that "It felt like my neck was broken." She was driven to a hospital by friends and immediately placed under the care of a physician. She was having severe pain in her neck and back. Her left arm had gone numb and her knees were bruised and lacerated. She was in severe pain from what was described to her by the doctor as a whiplash injury to her neck and back. She was placed in traction, was given medication for pain and put to bed by the doctor. She was in traction for a number of weeks and her doctor testified that she was "in spasm." She was bedridden for most of the balance of 1966 and for much of 1967, and 1968 up to the time of the trial.

Subsequent to the accident it seems clear that she has not recovered. The medical and other testimony indicates that her disability will probably continue indefinitely over the years at pretty much a constant level requiring future medical attention by way of office visits to the doctor and physiotherapy. Though the pain that Mrs. Blackburn suffers is always present, it is sometimes worse than others and at these times she must stay in bed completely. She cannot sleep without a heating pad. Whenever she tries to do any of her normal ac-

tivities the pain worsens to such severity as to put her to bed. She testified that when the pain is very severe her arm becomes numb down into her hand. Only temporary or partial relief is afforded through bedrest, heat and medication. These conditions were estimated to be her future prospects.

Her physician testified that the collision was the producing cause of these injuries. He further testified that "there were spastic muscles, muscles in spasm in the posterior part of the back and upper back and into the shoulders." He stated that Mrs. Blackburn had sprains of the muscles and ligaments reflecting visible evidence of traumatic injury, producing pain, numbness in the arm, and headaches, symptoms common to whiplash injury. X-rays showed a loss of lordatic curve and a narrowing of the intervertebral space, abnormalities resulting from "muscle spasm and sprain of these ligaments" which affects the nerves causing numbness and severe pain. The doctor testified that Mrs. Blackburn has not recovered from her disability and that it may go on for years pretty much at a constant level. Up to the time of trial Mrs. Blackburn has seen her physician 18 times. She has also seen another doctor in another city; this being necessitated by severe pain while visiting there. She will require future medical treatment in the form of office visits to the doctor, drugs and will likely require therapy in the future. She is in pain, disabled, and it is difficult to predict her future in this regard. The evidence of this pain is largely subjective, however there is medical testimony of objective findings to substantiate the other testimony.

█ █ It is difficult, if not impossible, to appraise another's pain and suffering and the extent thereof. City of Houston v. Moore, 389 S.W.2d 545 (Tex.Civ.App.), writ ref., n. r. e.; Gilbert v. Haigler, supra. That is the jury's function, however. The instant case appears to have been tried in a factual, straight-forward manner and the record gives no indication that anything other than the testimony before the court was responsible for the jury's verdict.

There is no indication that the jury was moved by any improper consideration in assessing appellee's damages. Green v. Rudsenske, supra; Dallas Transit Co. v. Collier, 317 S.W.2d 557 (Tex.Civ.App.), no writ hist. The amount of damages suffered is ordinarily a fact issue and this court should not substitute its opinion for that of the jury if the verdict is supported by sufficient evidence. Texas & P. Ry. Co. v. Crown, 220 S.W.2d 294 (Tex.Civ.App.), writ ref., n. r. e.

█ While we might disagree with the award the function of assessing damages is the jury's and it should not be disturbed unless it is irrational or so excessive as to shock the conscience of the court. Pioneer Bus Co. v. Ward, 422 S.W.2d 550 (Tex.Civ. App.), no writ; Lackey v. Perry, 366 S.W.2d 91, 96 (Tex.Civ.App.), no writ; Dallas Transit Co. v. Hammer, 404 S.W.2d 85 (Tex.Civ.App.), no writ. The jury observed the witnesses, weighed the testimony and assessed the damages. The trial judge gave no indication that he found such damages excessive and we are in accord with his determination.

The judgment of the trial court is affirmed.