**HALLIBURTON COMPANY, Appellant,**

**v.**

**Josefina OLIVAS, a widow, Individually and in behalf of Armando Olivas, a minor, and as representative of the Estate of Victor Olivas, Deceased, Appellees.**

**No. 6367.**

Court of Civil Appeals of Texas, El Paso.

Nov. 13, 1974.

Rehearing Denied Dec. 4, 1974.

Addendum Opinion Dec. 11, 1974.

Scarborough, Black, Tarpley & Scarborough, Davis Scarborough, Frank Scarborough, Beverly Tarpley, Abilene, for appellant.

Warren Burnett, Associated Warren Burnett, Richard J. Clarkson, Timothy Ann Sloan, Odessa, for appellees.

## OPINION

WARD, Justice.

This is a suit under the wrongful death statute as a result of a vehicle collision in which an automobile driven by Victor Olivas, the decedent, collided with a truck owned by Halliburton Company. Halliburton, the Appellant, admitted liability for the accident, and the trial was confined to

the issue of damages. Based upon the jury verdict, judgment was entered in the amount of $180,000.00 for the widow and $200,000.00 for the infant son, and from these amounts awarded Halliburton appeals. We affirm on condition of remittitur in the amount of $80,000.00.

■ The Appellant's points are that the evidence was insufficient to sustain the amount of damages assessed, the verdict was excessive and the trial Court abused its discretion in failing to order a remittitur. These assignments require this Court to examine all of the evidence, to decide if it is factually sufficient to support the verdict and they also invoke the remittitur power of the Court of Civil Appeals under Rule 440, Texas Rules of Civil Procedure.

A review of the evidence is necessary. Victor Olivas, age eighteen, was immediately killed as a result of an accident on June 21, 1972. At that time, he had been married to Josefina Olivas for approximately eleven months and they had an infant son, Armando Olivas, six weeks old. The deceased quit school when he was in the eighth grade and sixteen years of age. From the time he quit school and up to his death, he had worked regularly. During two months of each summer, Victor and his family went to Nebraska and worked in the beet fields, and it was during the summer of 1971, when Victor was working in the fields, that he met his wife. In addition to the beet field work, he had been employed at six different jobs. During the year 1970, he earned $3,820.00 and during the year 1971 his total wages amounted to $3,900.00. In August, 1971, he was hired as a common laborer at Stanton, Texas, at an hourly rate of $1.60 an hour, and in October, 1971, he got a raise of 10¢ an hour. His Stanton employer testified that he was above the average in the manner that he did his job, that he spoke good English and was well liked. He left that job in the early part of March, 1972, and was then employed by Strain Brothers, Incorporated, on highway construction. His foreman at Strain Brothers testified he hired Victor as a concrete finisher and his pay was at the rate of $3.00 an hour for eight hours and time and a half for two hours a day, for a total of $33.00 a day, five days a week; that he was a dependable and reliable worker, and was above the average. Testimony established that cement finishers were in short supply; that the pattern among cement finishers was to begin on highway construction work and then as they became more skilled they advanced with higher pay into commercial and residential type of cement finishing. A skilled cement finisher could make $60.00 or $70.00 a day depending on how much he was willing to work.

As to the amount of this verdict, the important witness offered by the plaintiff was Everett G. Dillman, a professor of business administration at the University of Texas at El Paso, and specializing in economics, income and price-projections of the future. He testified that Victor Olivas had a life expectancy of 51.93 years and a work-life expectancy of 42.7 years. He stated that there is present in the American economy a proven long-term annual increase in an average person's wages of about 5% and this includes a long-term increase in the cost of living and an increase for productivity. The long-term increase in cost of living is 1.75% per year and the long-term increase for productivity is 3.25% per year. Additionally, there is also present a second factor causing an average person's salary to increase and that is what is called the age earning cycle. An average laboring man acquires greater proficiency soon after he begins and his wages increase rather rapidly. In his mid years his wages tend to level off and then decline slightly in his last years. This age earning cycle for the typical person who starts as a cement finisher, with a seventh-grade education, would cause a probable average increase of about 3% per year, which is in addition to the 5% general increase. He testified that by using the discount rate of 6%, the present cash value of

the earning capacity of an individual such as Victor Olivas and with a work-life expectancy of 42.7 years would be $296,998.00 if the individual was never promoted and the only increase factor considered was the long-term general increase in wages of 5%. Again, using the discount rate of 6%, but including the age earning cycle so that the total annual increase is at 8%, the present cash value of the earning capacity would be $570,274.00. The above figures were all based on an annual wage of $8,580.00, which was computed at the rate the wages were paid to him by Strain Brothers at the time of his death. On cross-examination, Mr. Dillman testified that if Victor Olivas stayed as a concrete finisher with no promotion, but using the 5% increase factor, that his annual income would raise from $8,580.00 to $65,000.00 a year at the end of his work-life expectancy and that by using the 8% factor, his last annual income would raise to $130,000.00 a year. He admitted that the present salary was calculated on a 50-hour week, 10-hour a day, 5-day a week work period at his last rate of pay and that his calculations did not include any deductions that were made from the man's pay and did not include any deductions for personal expenses that would have been incurred by Victor Olivas.

Testifying for the defendant was T. T. Chamberlain, a consulting actuary, and he stated that the correct discount rate and the one which more correctly reflected present conditions would be at 7%. He produced a series of calculations based on present annual wages of $4,000.00 and $6,000.00 with forecasted annual increases in wages at 0%, at 2% and at 3%, and with rates of discount at 6% and 7% and presented for each of the various situations figures before the jury. He also broke his figures down on the assumption that one-third of the amounts were to be spent on personal maintenance of the individual. He testified as to the largest figures that he presented, as follows: Assuming a $4,000.00 present annual wage with an annual increase at 3%, the annual wage of that individual at age 60 would be $13,800.00. The present value of those wages at the discount rate of 6% would be $100,200.00, two-thirds of which he assumed to be for the family would be $66,800.00. The same figure discounted at the rate of 7% would be $86,200.00 and two-thirds thereof would be $57,500.00. Assuming a present annual wage of $6,000.00 and with an annual increase in wages of 3%, the annual wage at age 60 would be $20,700.00 and discounted at 6%, the present value of those wages would be $150,300.00. Two-thirds of that to the family would be $100,200.00. Discounted at the rate of 7%, the present value of those wages would be $129,300.00, two-thirds of which for the family would be $86,200.00.

On cross-examination, Mr. Chamberlain admitted that he was not an economist and was only making the mathematical calculations based on assumed data. He admitted he could not tell what the long-term predictable wage increase would be and that the one-third subtracted out of his figures for the use of the individual workman was an arbitrary figure and not based on any statistics.

In the Court's charge, as to the widow, the jury was permitted to consider the elements of care, maintenance, support, services, advice, counsel, and contributions of pecuniary value, that she would in reasonable probability have received from her husband during his lifetime had he lived. As for the minor child, the element of education was added to the list of elements that could be considered.

The standard to be used by a Court of Civil Appeals in deciding that an award is or is not too large is simple in statement but obscure in application. A determination of excess by a Court of Civil Appeals is one of fact and as such is not reviewable. Carter v. Texarkana Bus Company, 156 Tex. 285, 295 S.W.2d 653 (1956). Professor Eugene Smith, in Tex-

as Remittitur Practice, 14 Sw.L.J. 150, states that like most findings of fact, the determination of excess is largely subjective and the Supreme Court has not defined specifically the procedure to be followed. The responsibility of the various Courts of Civil Appeals is the same as that of the trial Courts. The test repeatedly made is that "All the Court of Civil Appeals can do, and all that is required of it to do, . . ., is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess." Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993 (1916); Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959). We must first decide upon a reasonable award and then compare our idea with the jury's estimate. If the jury was awarded more, the jury's verdict is unreasonable. But, as pointed out by Professor Smith, the Courts of Civil Appeals are not in agreement as to the method to be utilized in ascertaining a reasonable amount of damages.

A summation of this problem is contained in Collins v. Gladden, 466 S.W.2d 629 (Tex.Civ.App.–Beaumont 1971, writ ref'd n.r.e.), at 636:

"There are two distinct lines of authority in Texas as to how both a trial court and an appellate court should determine the question as to excessiveness. Justice Norvell, while on the San Antonio Court of Civil Appeals, wrote the opinion in that frequently cited case, Kimbriel Produce Co. v. Webster, 185 S.W.2d 198 (Tex.Civ.App.—San Antonio, 1944, error ref. w.o.m.), in which it is stated that precedents are helpful and of some value in determining whether damages awarded for similar personal injuries are excessive or inadequate, and that there should be some uniformity as to the amounts of verdicts and judgments in the various cases. See also, Bill Hendrix Auto Parts v. Blackburn,

433 S.W.2d 237 (Tex.Civ.App.—Houston, 14th, 1968, no writ) and Coastal States Gas Producing Company v. Locker, 436 S.W.2d 592 (Tex.Civ.App.—Houston, 14th, 1968, no writ).

\* \* \* \* \* \*

"Other courts of civil appeals indicate in their decisions that each case must stand on its own facts and circumstances, and that comparison with other verdicts is of little or no help. Missouri Pacific Railroad Company v. Handley 341 S.W.2d 203 (Tex.Civ.App.—San Antonio, 1960, no writ); Hayter Lumber Company v. Winder, 295 S.W.2d 730 (Tex.Civ.App.—Beaumont, 1956, error dism.). \* \* \*."

Justice Keith, in his concurring opinion in Collins v. Gladden, made a critical but accurate observation when he wrote that:

" \* \* \* the standards laid down for our guidance in the review of damage findings leave much to be desired. In fact, from my study of the subject, I have concluded that there are no guidelines laid down for an appellate review of monetary awards in suits for damages involving personal injury and death or allowances for pain and suffering. \* \* \*

\* \* \* \* \* \*

"The practice of comparing awards made in other cases is unsatisfactory for the obvious reason that no two cases are alike. The review of other decisions as a guide is likewise subject to the criticism that the appellate court has gone outside of the record and considered evidence, i.e., what other courts have awarded, when such evidence could not, under any theory, have been admissible for consideration by the jurors.

"In the other permissive approach, consideration confined to the record in the particular case under review without

recourse to prior decisions, the appellate court is without any definitive guide or rules prescribing the manner in which it determines the amount of the remittitur * * *. Under this method of review, the process is essentially one of subjective ratiocination by three judges who have not seen or heard a living witness with any knowledge of the facts.

"This ad hoc determination is, of necessity, based primarily upon a visceral reaction to the whole case as affected by the idiosyncrasies of the reviewing judge at the time the determination is made. * * *."

■ The jury award before us is very large. Undoubtedly, the jury considered the rapidly decreasing value of the dollar, and in doing this the jury acted properly. Hammond v. Stricklen, 498 S.W.2d 356 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); J. A. Robinson Sons, Inc. v. Ellis, 412 S.W.2d 728 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). In this regard, from the date of the judgment in the trial Court to the present, our "double digit" inflation has forced upon the Appellee a substantial reduction in the real amount of her recovery.

■ In a wrongful death case, the earning capacity of the deceased is not the sole basis for damages in such a case. "Every father and husband has for his wife and children a pecuniary value beyond the amount of his earnings by his labor or vocation." 17 Tex.Jur.2d, Death by Wrongful Act, § 60, p. 613. However, in a wrongful death action a computation of pecuniary loss based upon the projection into the future of the deceased's past earnings is the primary element of such awards and the award should bear some ascertainable relation to the pecuniary benefits which the decedent's spouse or child might reasonably have expected to receive had the wrongful death not occurred. Simpson v. United States, 322 F.2d 688 (5th Cir. 1963).

Considering the amounts of verdicts in comparable cases, we find that in Donaghey v. Van Cleave, 456 S.W.2d 524 (Tex. Civ.App.—Houston (1st Dist.) 1970, writ ref'd n.r.e.), the Court approved an award of $300,000.00 to the widow and four children of a man making $8,500.00 per year with a life expectancy of 35.9 years. $200,000.00 to the widow and three surviving minor children was upheld for a 27-year-old decedent employed by El Paso Natural Gas. Company earning $9,000.00 while on a field construction job. J. A. Robinson Sons, Inc. v. Ellis, supra. In Texas Consolidated Transportation Company v. Eubanks, 340 S.W.2d 830 (Tex.Civ. App.—Waco 1960, writ ref'd n.r.e.), an award totaling $162,500.00 to the widow and minor daughter of a 63-year-old railroad engineer earning $9,000:00 a year was upheld. Award of $180,000.00 to the surviving widow, 6-month-old son and parents of a 21-year-old highway worker earning $5,000.00 a year approved in McDonough Brothers, Inc. v. Lewis, 464 S.W.2d 457 (Tex.Civ.App.—San Antonio 1971, writ ref'd n.r.e.). An award of $220,000.00 did not "shock the sense of justice" of the Beaumont Court of Civil Appeals in Southern Pacific Company v. Castro, 473 S.W.2d 577 (Tex.Civ.App.—Beaumont 1971), rev'd on other grounds, 493 S.W.2d 491 (Tex.1973). There, the deceased was 33 years old and had earnings of $7,000.00 a year, and the widow received $100,000.00 and the four children $30,000.00 each. In Bell Aerospace Corporation v. Anderson, 478 S.W.2d 191 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.), this Court upheld a verdict for $481,000.00 in favor of a widow and four minor children of an Air Force Major earning $13,500.00 a year and 33 years of age. See generally, Speiser, Recovery for Wrongful Death, § 9:7; Vol. 3A, § 3.05, Personal Injury, Actions Defenses & Damages, by Louis R. Frumer, et al.

■ We have followed both of the suggested approaches to the problem. We

find that the evidence here supports the award of a large sum of money as damages. Nevertheless, after a consideration by each member of this Court of the testimony in this case and a consideration of the precedents, we have determined that the verdict in the total amount of $380,000.00 for the pecuniary losses suffered by the widow and the minor child are excessive in the sum of $80,000.00. For a surviving widow and one child, this is far in excess of comparables in this State. However, under the evidence in this case and under our present economy, we decline to hold that any larger excess exists. The judgment of the trial Court therefore will be affirmed if the Appellee will file in this Court within thirty days hereof a remittitur in writing of $80,000.00, as herein directed, otherwise such judgment will be reversed and the cause remanded for a new trial. We order that the remittitur be filed by the Plaintiff, Josefina Olivas, solely as next friend of the minor Plaintiff, Armando Olivas, and solely out of the $200,000.00 awarded to her for the use and benefit of the minor Plaintiff.

The "insufficient evidence" point is overruled, and the judgment is affirmed on condition of remittitur.

## OPINION AFTER ENTRY OF REMITTITUR

WARD, Justice.

On the 10th day of December, 1974, the Appellee, Josefina Olivas, solely as next friend of the minor plaintiff, Armando Olivas, and solely out of the $200,000.00 awarded to her for the use and benefit of the minor plaintiff has filed a remittitur of $80,000.00 in compliance with the suggestion of remittitur in our opinion of November 13, 1974. On this date, the trial Court's judgment in favor of Josefina Olivas, as next friend of the minor plaintiff, Armando Olivas, is reformed by deducting $80,-000.00 from that portion of the judgment, and as so reformed the judgment of the trial Court is affirmed in all other respects.