**DOVER CORPORATION and J. R. Preis, d/b/a Coastal Bend Sales, Appellants,**

v.

**Sylvia PEREZ as Temporary Administratrix of the Estate of Jesse E. Perez, Deceased, Appellee.**

No. 1372.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

For Supplemental Opinion on the Filing of Remittitur Sept. 21, 1979. See 591 S.W.2d 547.

J. Robert McKissick and Lee Mahoney, Corpus Christi, for appellants.

Joseph D. Jamail, Houston, William R. Edwards, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

This is an appeal from a suit for wrongful death brought by appellee, Sylvia Perez, individually and as temporary administratrix of the estate of Jesse E. Perez, and as next friend of Margo Perez and Yvett Perez, against Ajax Supply Company, Central Plumbing & Heating, Inc., Jack Colmenero, d/b/a Coastal Home Designers, and appellants, Dover Corporation and J. R. Preis,

individually and d/b/a Coastal Bend Sales. Plaintiff alleged that the defendants had negligently designed, manufactured, marketed, distributed, and installed an unreasonably dangerous wall heater which gave off excessive amounts of carbon monoxide and thereby poisoned Jesse Perez and caused his death. The jury found that Sylvia Perez should recover $650,000.00 for the wrongful death of her husband, and that her daughters, Margo and Yvett, should recover $150,000.00 each. The award was made jointly and severally against Dover Corporation and J. R. Preis, individually and d/b/a Coastal Bend Sales. All other defendants were found to be without liability. Motions for instructed verdict and motions for new trial of Dover and Preis were denied and this appeal followed. The primary questions to be decided in this appeal concern the causal connection between Dover's design and marketing of the heaters and the death of Jesse Perez, improper jury argument, failure to grant a continuance and excessiveness of damages.

The record indicates the following facts and circumstances. On January 13, 1975, Jesse Perez died as a result of carbon monoxide poisoning caused by the wall heater installed in his first floor unit of a two story, fourteen-unit apartment complex. The apartment was owned by appellant, Preis, and the wall heater was manufactured by Dover Corporation.

Upon later inspection of the heater in question, it was discovered that a 35,000 BTU burner unit had been installed into a 25,000 BTU case or housing. The case was marketed separately from the burner unit, and a 25,000 BTU case could hold either a 25,000 BTU burner or a 35,000 BTU burner. The only markings on the heater case itself to prevent a mismatching was a yellow and red placard on the inside of the case which warned any person installing a burner to properly match a 25,000 BTU case with a 25,000 BTU burner. The placard did not warn of carbon monoxide poisoning in the event of a mismatch. The evidence was uncontradicted that whenever a 35,000 BTU burner was installed in a 25,000 BTU case, excessive and dangerous amounts of carbon

monoxide would probably be given off by the gas heater.

In addition to the evidence concerning the mismatching of the case and burner, there was also extensive testimony that the heater had been improperly vented. The USA and NFPA standards and the city plumbing and building code of Corpus Christi both required that a heater of this nature be vented straight up from the unit through the roof. The instructions which accompanied the heater also recommended this manner of venting. One of Preis' employees vented the heater vertically only a few feet, however, and then vented it horizontally out through the wall.

In answer to special issues the jury found that a 35,000 BTU burner was installed in a 25,000 case which was manufactured by appellant Dover; that the failure of Dover to protect mechanically against the use of a 35,000 BTU burner in a 25,000 BTU case caused the product to be unreasonably dangerous and was a producing cause of Perez' death.

In addition, the jury found that the failure of appellant Preis, the owner and builder of the apartment, to comply with the city code provisions with respect to the installation of the venting system of the heater was a proximate cause of Perez' death; that the venting system was installed at the direction of Preis or one of his employees; that the wall heater and venting system were installed in a negligent manner which was a proximate cause of Perez' death; that a reasonably prudent person using ordinary care would not have installed or maintained a 35,000 BTU burner in a 25,000 BTU case and that such installation or maintenance was a proximate cause of Perez' death; and that the heater was not maintained by Preis in the manner that an ordinary person exercising ordinary care would have maintained it, which also was a proximate cause of Perez' death. Preis does not challenge these findings of negligence and proximate cause in this appeal nor does Dover challenge the findings that it produced and marketed an unreasonably dangerous product.

Dover brings 27 points of error and Preis brings 24 points of error. Dover's points 15 through 24 contend there is both legally and factually insufficient evidence to support the jury's findings that the defective design and inadequate warnings were both producing causes of the death. Basically, Dover contends that the negligence of Preis' employees was the sole producing cause of the death or that this negligence was a new and independent cause of the death. We disagree.

Producing cause is defined in various ways. In the present case the trial court defined producing cause as follows:

> "By the term 'Producing Cause' is meant an efficient, exciting, or contributing cause, which, in a natural and continuous sequence, caused in whole or in part the death of Jesse Perez. There can be more than one producing cause, but there can only be one sole producing cause."

In *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 351 (Tex.Sup.1977), the Court noted the definition that the trial court in that case used, and that definition of producing cause is substantially the same definition as above with the added requirement in *Hopkins* that "but for the said cause the occurrence or injuries would not have occurred." Compare *Jones v. Traders & General Ins. Co.,* 140 Tex. 599, 169 S.W.2d 160, 162 (Tex.Comm'n App.1943, opinion adopted).

Dover initially points to expert testimony that even with a mismatched burner and case, a proper vent would have prevented any harm. Dover then concludes that but for the improper venting, Perez would not have died; and, thus, the negligent venting was the sole producing cause of death.

■ There may be more than one producing cause of any injury, though. *General Motors Corp. v. Hopkins,* supra. And, testimony in this case is abundant that all of the 25,000 BTU Dover heaters in the thirteen other apartments contained properly matched burners and cases, but were improperly vented in the same manner and, similar to the heater in Perez' apartment,

had received no maintenance since installation. There were other people in those apartments, but there were no reported deaths of any of them. There was no testimony of any other resident having ill effects in the other apartments, and Preis testified that the heater in Perez' apartment was the only heater in his apartments which had malfunctioned. Consequently, the effects of the mismatched case and burner were necessary components of Perez' death and we can assume that had Dover properly warned of such dangers, or had designed the product so as to prevent a mismatching, that the mismatching would not have occurred and Perez probably would not have died. *Technical Chemical Company v. Jacobs,* 480 S.W.2d 602, 606 (Tex.Sup.1972). It was the combination of the mismatched burner and case and improper venting which caused Perez' death. Where several causes producing harm are concurrent and each is an efficient cause without which the injury would not have happened, then the injury may be attributed to all or any of the causes. See *South Austin Drive-In Theater v. Thomison,* 421 S.W.2d 933, 952 (Tex.Civ.App.—Austin 1967, writ ref'd, n. r. e.). Dover's arguments concerning sole producing cause are overruled.

Dover then argues that the evidence is conclusive that improper venting and maintenance was a new and independent cause of the death, breaking the causal connection between the mismatched components and the death.

In contravention to this position, we first note that there was some evidence that even if the heater had been properly vented, a mismatched burner and case could be dangerous to the occupant.

■ Secondly, we note that new and independent cause is not an issue to be submitted to the jury, but is an element to be considered by the jury in determining the existence of producing cause. Compare *Dallas Railway & Terminal Company v. Bailey,* 151 Tex. 359, 250 S.W.2d 379, 383 (1952), *Pioneer Natural Gas Co. v. Caraway,* 562 S.W.2d 284 (Tex.Civ.App.—Eastland

1978, writ ref'd, n. r. e.). In a products liability case, whether an intervening act will constitute a new and independent cause is generally a question of foreseeability. 1 L. Frumer and N. Friedman, Products Liability § 11.04[1] (1975); *Griggs v. Firestone Tire and Rubber Company,* 513 F.2d 851 (8th Cir. 1975). See also *General Motors Corp. v. Hopkins,* supra; *C. A. Hoover and Son v. O. M. Franklin Serum Company,* 444 S.W.2d 596, 598 (Tex.Sup.1969); 72 C.J.S. Supp. Products Liability §§ 30–32 (1975). In this regard appellant is asserting, in effect, that Dover could not have foreseen that Preis would improperly vent and maintain the heater.

■ At trial, Dover's expert testified Dover could not have foreseen or anticipated that someone would improperly install one of its heaters. He then stated, however, that some units probably are improperly installed. He also stated that Dover knew that mismatched components could cause many problems. Dover's expert also related that the primary reason for proper adjustment and proper venting was the prevention of the escape of carbon monoxide. He then explained that as Dover's design engineer, he tries to prevent too much carbon monoxide from accumulating and that every unit should have instructions, which are in essence a warning, to properly vent the heaters. We hold that the above testimony constituted legally and factually sufficient evidence that Dover could have foreseen that a heater would at some time be improperly vented and maintained. Dover's contentions as to new and independent cause are therefore overruled. Dover's points 15 through 24 are overruled.

Dover's points 25 and 26 complain that the trial court abused its discretion in ordering this case to trial on January 23, 1978, in the absence of Dover's attorney of record, Mr. Lev Hunt, and in not allowing another attorney in Mr. Hunt's firm time to prepare for trial. The evidence shows that this case was filed on October 3, 1975. A pretrial conference was held October 28, 1976, and at that time a docket control order was entered with the consent of Dover's counsel

setting the trial for January 16, 1978, a year and a quarter later. This order, signed by Mr. Hunt, stated, "At the time of this order we have no conflict in our schedules."

On December 29, 1977, two and one-half weeks before the setting, Mr. Hunt advised the court and opposing counsel that he would begin trial in LaSalle County on January 9, 1978, and that it was possible that the trial would continue over into the week of January 16, 1978.

On January 12, 1978, Mr. McKissick, a member of Mr. Hunt's law firm, filed a motion for continuance stating that Mr. Hunt's trial would continue through the week of the setting of the present case (January 16, 1978).

On Monday, January 16, 1978, this case was called for trial and Mr. McKissick announced that Dover was not ready for trial because of Mr. Hunt's absence. The court, after considering, among other things, the numerous parties in the case and out of state witnesses, set the case for Wednesday, January 18, 1978. On January 18, 1978, Mr. McKissick filed another motion for continuance which was partially granted, and the case was set for the following Monday, January 23, 1978. The trial court noted that a firm the size of the one to which Mr. Hunt and Mr. McKissick belonged "had adequate time to be ready for trial on this case, knowing that it had been set for a year, and knowing about the case [Mr. Hunt was] involved in up in [LaSalle County] for quite some time." The court then recognized Mr. McKissick as a "very competent lawyer who would do a good job."

Finally, Judge Harville, who heard these motions for continuance, told the parties that if there was still a problem with proceeding to trial on January 23, 1978, that they should take it up with Judge Wade, who would be trying the case.

No additional motion for continuance was filed after January 18, 1978, and no matter of continuance was presented to Judge Wade. Indeed, on January 23, 1978, all parties announced ready for trial. Dover was represented by two lawyers from Mr. Hunt's firm, Mr. McKissick and Mr. Mahaffey.

■ Rule 253, T.R.C.P., places the ruling on a motion for continuance based on the absence of counsel within the discretion of the trial court, and the ruling of the motion will be reversed only upon a showing of abuse of the court's discretion. *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex.Sup. 1963).

In *Traders & General Ins. Co. v. Gray,* 257 S.W.2d 327, 329 (Tex.Civ.App.—Waco 1953, no writ), the Court explained the policy with regard to the denial of a continuance based upon the absence of counsel:

". . . [N]o abuse of discretion is shown in the denial of a continuance based upon the absence of counsel, where another attorney represented the complaining party at the trial of the case and there is nothing to indicate that the complaining party was deprived of any defense by the absence of the original attorney or that it was not ably and fully represented by the attorney who tried the case."

■ We find Dover was represented by able counsel in this case and after reading the entire record find that Dover was not deprived of an adequate defense. Moreover, we note as did the trial court, that had counsel in Mr. Hunt's firm begun preparing for this case when Mr. Hunt advised the court and parties of the possible conflict by letter dated December 29, 1977, then they would have had over three weeks to prepare for trial. Compare *Kegans v. Williams,* 214 S.W.2d 799 (Tex.Civ.App.—Eastland 1948, writ ref'd n. r. e.). Dover's points 25 and 26 are overruled.

Dover's point 27 and Preis' points 20 through 23 claim the trial court erred in entering judgment for appellee because of improper jury argument by appellee's attorney. During jury argument, appellee's counsel stated:

"Don't you know something else, if they had one whit even could hint that somebody knew something bad about Sylvia Perez, they would have drug it before you like a dirty sheet you would have

seen it. If they could have reputed this in any way, they would have had it here. They have all the resources to do it with. But no, you saw nothing. This is the evidence. Speculation? It would be speculative not to do this. . . . you heard the only evidence of this court—if they had any evidence that Jesse Perez was a philanderer, wouldn't they have brought it? They brought you the divorce. Or is that she was a bad woman, wouldn't you have seen it?"

Both Dover and Preis claim these were statements unsupported by any evidence that inflamed the jury. In *Standard Fire Insurance Company v. Reese*, 584 S.W.2d 835, 839 (Tex.Sup.1979) the Court fully discussed the area of improper jury arguments. There it stated:

"In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice * 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence."

■ Jury argument is generally limited to a discussion of the evidence and to the deductions and inferences therefrom as related to the court's charge and any preceding argument of opposing counsel. 3 McDonald, Texas Civil Practice sec. 18.05.2 (1970). In the present case, there was no testimony one way or the other concerning the "goodness" of Sylvia Perez, or the issue of whether or not Jesse Perez was a "philanderer." The appellee was obviously attempting to press an inference out of the fact that nothing was presented by Dover or Preis in this regard. However, in order for this to be proper, there should be some evidence in the record that Dover had access to or was in control of information it had not presented. *Texas Power & Light Co. v. Walker*, 559 S.W.2d 403, 406 (Tex.Civ. App.—Texarkana 1977, no writ); 3 McDonald, Texas Civil Practice sec. 13.06 (1970); compare *J. C. Penney Company v. Duran*, 479 S.W.2d 374, 381 (Tex.Civ.App.—San Antonio 1972, writ ref'd, n. r. e.). Thus, appellee's counsel was in error making these comments. We also find no evidence that these comments were invited or provoked.

■ But, as to the third and fourth elements, there was no objection by any of the parties to these arguments, and we hold they were curable. Appellants strongly argue the incurable nature of these arguments such that a prompt withdrawal of the statements or a reprimand by the judge would have been useless. We disagree. As shown above, in *Standard Fire Insurance Company v. Reese*, supra at 839, the Court stated that there are only rare instances of incurable harm from improper jury argument; e. g., appealing to racial prejudice; calling someone a "liar", "fraud" and the like; or by making an unsupported charge of perjury. We find the challenged argument herein does not come within the severity of these prejudicial statements and was not incurable. After considering all the evidence and the above considerations, we find the argument was curable and that

therefore appellants' failure to object waived any error that might have arisen by this argument. Compare *Ramirez v. Acker*, 134 Tex. 647, 138 S.W.2d 1054 (1940). We also find that the error was harmless under Rule 434, T.R.C.P. Dover's point 27 and Preis' points 20 to 23 are overruled.

Preis' point 24 claims the trial court erred in entering judgment for appellee because of improper jury argument concerning another matter. Prior to the trial, during voir dire examination of the jury panel, counsel for Central Plumbing & Heating Company stated:

"But there is a man, I am told this morning, after all the years and most of the discovery that we have been through, named unlikely enough Ernest Breaux, who I am told by Mr. Preis' lawyer, he doesn't know how I can get ahold of him or where he is, and I presume he is in Louisiana, but—"

Objection was made to this statement and the objection was sustained by the Court. However, the same counsel later again stated:

"Let me put it to you this way, if the gentleman had some evidence at all that my client put those heaters in don't you know he would have had it down here."

At this point a motion for mistrial based upon the statement by counsel in violation of the instructions of the court was made and was overruled by the Court.

■ There was no evidence that Preis had access to a witness named Breaux or that Breaux possessed further testimony concerning who had installed the heater in question. This argument only served to strengthen Central Plumbing & Heating's argument that it was one of Preis' employees rather than Central Plumbing & Heating's employees that installed the heater in question. There was abundant and persuasive evidence at trial that Central Plumbing & Heating's employees had not installed the heater, and thus, the inference being drawn here was only cumulative of prior evidence and was harmless. We find the verdict was grounded on proper evidence. See *Standard Fire Insurance Company v. Reese*, supra at 839. Preis' point 24 is overruled.

Dover's points 1 through 14 and Preis' points 1 through 19 challenge the legal and factual sufficiency of the evidence to support the judgment of $650,000.00 for Mrs. Perez and $150,000.00 each for Margo and Yvett Perez for a total of $950,000.00. In this connection, both appellants ask for a remittitur.

■ In *J. A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728, 744 (Tex.Civ.App.—Amarillo 1967, writ ref'd, n. r. e.), we find the following appropriate guidelines:

"In a wrongful death case the amount of damages to which the beneficiaries are entitled is primarily and peculiarly within the province of the jury; and in the absence of a showing that passion, prejudice or other improper matters influenced the jury, the amount assessed by them will not be set aside as excessive."

But where the amount is so excessive as to shock a sense of justice in the minds of the appellate court, the verdict will be found to be excessive. *Main Bank & Trust v. York*, 498 S.W.2d 953, 955 (Tex.Civ.App.—San Antonio 1973, writ ref'd, n. r. e.).

■ Many rules pertain to the jury's computation of damages, some of which follow. As stated in the charge to the jury in the present case, compensable elements to be considered for a wife losing a husband are not only the future pecuniary loss but also intangibles such as loss of care, maintenance, support, services, advice and counsel. Compare *Halliburton Company v. Olivas*, 517 S.W.2d 349 (Tex.Civ.App.—El Paso 1974, no writ); *Texas Consolidated Transportation Co. v. Eubanks*, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd, n. r. e.). As stated in the charge to the jury concerning the minors, the education the minors would have received from the deceased parent, as well as the elements above set out for the widow may be considered. Furthermore, the jury may consider the rapid devaluation of the value of the dollar and it is not bound by mortality tables. *Roberts v. Tatum*, 575 S.W.2d 138

(Tex.Civ.App.—Corpus Christi 1978, writ ref'd, n. r. e.). The present value of future earnings is one proper method of valuing the pecuniary loss to the beneficiaries. *Texas Consolidated Transportation Co. v. Eubanks,* supra; 17 Tex.Jur.2d, Death by Wrongful Act, § 44 (1960). Finally, in a case such as this, the reviewing court must first review all of the evidence, and view it in a light most favorable to the award. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Wharf Cat, Inc. v. Cole,* 567 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Bell Aerospace Corporation v. Anderson,* 478 S.W.2d 191, 201 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.).

Texas courts have sometimes followed two approaches in determining excessive damages; namely, looking to precedent from other cases and secondly, looking to the facts and circumstances of each case. *Halliburton Company v. Olivas,* supra. In *Best Steel Bldgs., Inc. v. Hardin,* 553 S.W.2d 122 (Tex.Civ.App.—Tyler 1977, writ ref'd, n. r. e.), the court cited the *Halliburton* case and the two methods above mentioned. The court explained that the practice of comparing awards in other cases was unsatisfactory to it because of the factual differences in the cases and also because of the continued erosion of the value of the dollar. It preferred the "particular case" approach "inadequate as it is." In light of the rapid inflation being experienced today we also tend to follow the *Best* decision, but will not ignore the instructive value of damage awards in other cases.

We will first review the potential pecuniary loss realized by the Perez family. At the time of his death, Perez was 28 years old and was holding a regular, full time job with the Corpus Christi Independent School District as a supervisor for the reading material center earning about $600.00 a month, and was supplementing his income working about three nights a week as a musician in a local orchestra. He was earning about $75.00 a week at this job. There is no evidence concerning Mr. Perez' prior work history or income, and as far as his potential for future advances was concerned, the only evidence was by Mrs. Perez when she stated that she expected that he would get raises. The evidence, viewing it most favorably to the jury's award, would justify the conclusion that Jesse Perez was making $11,100.00 per year at the time of his death. The evidence also shows that he spent only $50.00 per month on himself. This would leave a remainder for his wife and children of $10,500.00 per year.

The evidence shows that a male the age of Jesse Perez had a life expectancy of 44 years at the time of his death. The testimony was unclear, though, as to Jesse's work life expectancy. The parties stipulated at trial as follows:

"Mr. Jamail: We have a further stipulation, your Honor, regarding the lost earnings sustained by the family—

* * * * * *

Mr. Jamail: It is stipulated and agreed that if an economist were called to testify, it would be his testimony that the earnings of *a person* earning $7,000 a year with a work life expectancy of 38 years, would have a present cash value, today's market, of $325,000." (Emphasis supplied).

This was the only testimony which even remotely concerned Jesse Perez' work life expectancy and the jury could have inferred that the person referred to in the stipulation was Jesse Perez; however, that is not certain. Also noteworthy about the stipulation is the fact that the person in the stipulation was said to be earning $7,000.00 per year, whereas the testimony in this case shows that the funds apparently available to Perez' wife and children were $10,500.00 per year; i. e., one and one-half times the income in the stipulation.

It is not clear what portion of the jury's $950,000.00 award might have represented loss of future earnings. The reason for this confusion follows from the lack of any discussion in the parties' stipulation concerning the effects of inflation or possible wage increases on the present cash value of the amount stipulated. Indeed, the entire record is void of any evidence concerning infla-

tion or how it would affect the damages herein.

Concerning the award for intangibles such as care, maintenance, support, services, advice, counsel, and education, the record presents the following facts. Sylvia and Jesse Perez met after their last year of high school, dated for three years and married in 1968. At the time of Jesse's death they had been married approximately seven years. Their two daughters, Margo and Yvett, were ages four and six respectively at the time of trial, 1978. The couple was buying and furnishing a home on which Jesse was making the payments. The evidence indicates that Mr. Perez handled the financial affairs for the family. The evidence also indicates that they were a close family and that Jesse wanted a better life for his family than he had known, "So he did everything for his girls." Mrs. Perez also testified that Jesse was a good father, that he helped raise the girls and that he was very interested in them. She also stated that the only thing wrong with Jesse was his jealousy.

Because of this jealousy, Sylvia Perez had filed a divorce suit in November of 1974. Jesse's sister testified without objection at trial that Jesse did not want to divorce Sylvia, that he loved his wife and daughters very much and planned to go back with his wife and family. Even during the separation, Jesse ate meals with his family every evening and spent time with his daughters every day.

Sylvia Perez also testified that she did not intend to go through with the divorce. When asked why she filed for divorce she stated that "she was so young and so foolish was her best reason." And she stated the only reason she did it was to stop his jealousy.

■ In a wrongful death action the pecuniary loss calculated upon a projection into the future of the decedent's past earnings is the primary element of such awards and the awards should bear some ascertainable relation to the pecuniary benefits which the decedent's spouse or child might reasonably have expected to receive had the

wrongful death not occurred. *Halliburton Co. v. Olivas*, supra, *Best Steel Bldgs., Inc. v. Hardin*, supra.

It is virtually impossible to establish a percentage relationship between the projected future earnings and the intangibles in this case because the jury verdict was not divided into these elements and it is very difficult to determine what the jury considered to be the projected future earnings of Jesse Perez in light of the indefinite stipulation as to present value and his expected work life. We have inspected several authorities concerning damage awards and the relationship between damages for loss of future earnings and damages for intangibles. See e. g. *Halliburton Company v. Olivas*, supra (and cases cited therein); Annot., 47 A.L.R.3d 909 (1973); Annot., 46 A.L.R.3d 733 (1972); Annot., 46 A.L.R.3d 680 (1972).

■ All of which brings us to the following conclusions. Considering all of the evidence in the light most favorable to the jury award we reach the conclusion that the jury's total verdict is not supported by sufficient evidence to stand. We believe that the award as to the widow was arrived at by some improper motive such as passion, prejudice or speculation and that the award is excessive. After careful consideration by each member of this Court of the law and evidence in this case, we have determined that the verdict in the total amount of $650,000.00 for the pecuniary losses suffered by the widow is excessive in the sum of $350,000.00. Although the award to the children of the deceased father is high, we hold that it is not excessive under the facts of this case. But, because we have found no other error in the record which requires reversal, it is our duty to suggest a remittitur and the time within which it may be filed. Rule 440, T.R.C.P. The judgment of the trial court therefore will be affirmed if the appellee will file in this Court within fifteen days hereof a remittitur in writing of $350,000.00 as herein directed, otherwise such judgment will be reversed and the cause remanded for a new trial. We order that the remittitur be filed by the plaintiff,

Sylvia Perez, solely out of the $650,000.00 awarded to her individually.

The judgment of the trial court is affirmed on condition of remittitur.